**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MARTIN ARSHAM SEWING COMPANY, and Martin Arsham, Respondents.**

No. 88–5432.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 14, 1989.

Decided April 21, 1989.

Aileen A. Armstrong, Deputy Associate Gen. Counsel, Howard Perlstein, Karen L. Arndt (argued), N.L.R.B., Office of the Gen. Counsel, Washington, D.C., and Fred-

erick Calatrello, Director, N.L.R.B., Cleveland, Ohio, for N.L.R.B., petitioner.

Robert T. Rosenfeld (argued), H. Lee Einsel, Jr., Walter, Haverfield, Buescher & Chockley, Cleveland, Ohio, for Martin Arsham Sewing Co., Martin Arsham, an Individual, and Marsco, Inc., respondents.

Before KENNEDY and JONES, Circuit Judges, and SILER, Chief District Judge.*

KENNEDY, Circuit Judge.

The National Labor Relations Board ("NLRB" or "Board") petitions for enforcement of an order imposing personal liability upon Martin Arsham ("Arsham"), president and sole stockholder of the Martin Arsham Sewing Company, aka MARSCO, Inc. ("MARSCO"), for a portion of the back pay obligation of MARSCO. The obligation was imposed in an earlier unfair labor practice proceeding before the Board. Among other contentions, Arsham argues that the Board is now precluded from proceeding against him by attacking as fraudulent a transfer from MARSCO to him because the Board did not attempt to avoid this transfer in MARSCO's prior bankruptcy proceedings. The Board argues that it was not limited to bringing its back pay claim against the bankruptcy estate because the present action was brought against a non-bankrupt individual (Arsham) to intercept assets which never became a part of the bankruptcy estate. Because we find Arsham's argument persuasive, we decline to enforce the Board's order and therefore deny the petition.

In July of 1976 Arsham incorporated MARSCO under Ohio law for the purpose of contracting labor for industrial sewing operations. Arsham owned 100 percent of MARSCO stock and he and his wife were the company's directors. In the spring of 1978 the International Ladies' Garment Workers' Union initiated a campaign to organize MARSCO production employees. As a result of the company's actions during this campaign the Union filed unfair labor

practice charges on May 1, 1978. On June 14, 1978 the Board issued a complaint alleging labor law violations including Arsham's constructive discharge of 16 employees in violation of the National Labor Relations Act ("Act" or "NLRA"). An ALJ held a hearing on the complaint in October and November of 1978.

On February 5, 1979, prior to the issuance of the ALJ's opinion, Arsham, acting in his capacity as president of MARSCO, executed a promissory note from the company to Arsham, in his individual capacity, acknowledging past unsecured loans by Arsham to the company totaling $37,700.00. The terms of the note called for payment of interest at 8 percent annually with the balance of the note due immediately upon nonpayment of interest. The parties also executed a security agreement pledging all corporate assets as collateral for the debt.

Subsequently, on March 21, 1979, the ALJ issued his decision finding, *inter alia,* that 12 employees had been unlawfully terminated. On April 30, 1979, Arsham filed his security interest. On September 7, 1979 the Board issued its decision finding that MARSCO violated the Act and extending the ALJ's findings of discrimination to include four additional employees. MARSCO subsequently agreed not to contest the Board's order. Accordingly, on March 30, 1982 the Board issued a supplemental decision and order determining that $41,677.31 was due to the discriminatees. No back pay has been paid to date.

On December 9, 1981 Arsham, acting on his own behalf, filed a state court suit to enforce the confessed judgment provisions of the MARSCO promissory note. On December 17, 1981 the uncontested judgment became final. In satisfaction of this judgment Mr. and Mrs. Arsham, as directors of MARSCO, transferred all property of the company to Arsham individually on December 12, 1981. On December 24, 1981 MARSCO ceased doing business.

On December 30, 1981 MARSCO filed for voluntary bankruptcy. The Board was list-

---

* The Honorable Eugene E. Siler, Jr., Chief U.S. District Judge for the Eastern District of Kentucky and U.S. District Judge for the Western District of Kentucky, sitting by designation.

ed as an unsecured creditor on MARSCO's petition. Other unsecured creditors included Ms. Rita Kremser, S.P. Communications, and Arsham in his personal capacity. On February 24, 1982 the Board filed a Proof of Claim with the Bankruptcy Court and on June 6, 1982 inquired whether the trustee in bankruptcy had examined the issue of whether another corporation formed by Arsham, the Drape Factory, Inc., was a successor employer to MARSCO. Despite receiving notice of all subsequent proceedings in the Bankruptcy Court, a representative of the Board did not attend any creditors' meetings nor did the Board contest the trustee's report and final accounting.

On April 1, 1982 Arsham sold to the Drape Factory, Inc., all machinery, equipment and other assets which had formerly belonged to MARSCO for $20,000.00 evidenced by a five year promissory note with interest at 8 percent per annum. The bankruptcy estate and the trustee were subsequently discharged by order of the Bankruptcy Court dated January 18, 1983.

On November 30, 1984 the Board's General Counsel filed a motion before the Board to hold Arsham personally liable for the back pay award limited to the $20,-000.00 he obtained from the sale of MARSCO's former assets to the Drape Factory. The Board, after denying the motion initially, remanded the issue for a hearing in light of the General Counsel's proof that MARSCO possessed no assets when it filed for bankruptcy. After a hearing, an ALJ found Arsham personally liable in the amount of $20,000.00 to satisfy the back pay liability of MARSCO. The ALJ noted that the General Counsel conceded that Arsham was not an alter ego of MARSCO and that there was "no intent to saddle him personally with full liability for the back-pay due." Accordingly, the ALJ limited the claim for personal liability "to the value

of corporate assets retained by Arsham and allegedly converted to his personal use to avoid satisfaction of the Board's remedy." A three-member panel of the Board (Chairman Dotson, dissenting) adopted the ALJ's recommended order. The Board petitions for enforcement.

This case presents an apparent conflict between the policies underlying Chapter 7 of the Bankruptcy Code with those of the National Labor Relations Act and the function of the Board. The Board, pointing to its important function as the protector of the labor negotiation process, asserts that it should be allowed to hold Arsham personally responsible for the back pay liability to the extent he received assets from MARSCO. To hold otherwise, claims the Board, would allow Arsham to abuse the Board's remedial processes thereby frustrating the Board's enforcement of the labor laws and its attempt to effectuate the primary purpose of the NLRA. Mr. Arsham asserts that the imposition of personal liability upon him would effectively allow the Board to avoid the bankruptcy proceedings and circumvent the bankruptcy goal of channeling all claims against the debtor's estate into one proceeding thus ensuring equitable distribution among creditors. Arsham calls upon this Court to stop the Board's "end run" around the Bankruptcy Court's efforts to secure equality of distribution among creditors. We agree with Arsham that the Board erred in using its own procedures to recover the value of the assets which it claimed belonged to MARSCO and which, if they did, belonged in the bankruptcy estate for the benefit of all creditors.[1]

The equitable distribution principles of the Bankruptcy Code apply to the NLRB notwithstanding the Board's broad powers to effectuate the public purposes of the

---

1. The Board had several possible means available in the Bankruptcy Court to challenge Arsham's security interest. The Board could have requested that the trustee use his avoidance power under section 544(b) in conjunction with Ohio law to set aside the transfer of the security interest as a fraudulent transfer. See 11 U.S.C. § 544(b) (1982); Ohio Rev.Code Ann, §§ 1313.-56, 1336.07 (Page 1979); *In re Central Heating &*

*Air Conditioning, Inc.* 64 B.R. 733, 736 (N.D. Ohio 1986). *See also In re Landbank Equity Corp.*, 83 B.R. 362, 380 (E.D.Va.1987); *In re Hecht*, 51 B.R. 72, 76 (D.Vt.1985). The Board could also have moved the Bankruptcy Court to reorder the priorities of the creditors or invalidate Arsham's 1979 security agreement. *See* 11 U.S.C. § 510(c) (1982).

NLRA. In *Nathanson v. NLRB*, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952), the Board argued that the national interest in eliminating unfair labor practices justified the Board's receipt of priority in payment from the debtor's bankruptcy estate. The Supreme Court refused to treat the Board's claims for back pay any differently than other wage claims. The Court stated:

> The contest now is no longer between employees and management but between various classes of creditors. The policy of the National Labor Relations Act is fully served by recognizing the claim for back pay as one to be paid from the estate.... The theme of the Bankruptcy Act is "equality of distribution" ... and if one claimant is to be preferred over others, the purpose should be clear from the statute. We can find in the Bankruptcy Act no warrant for giving these back pay awards any different treatment than other wage claims enjoy.

*Id.* at 28–29, 73 S.Ct. at 82–83 (citation omitted). Thus, the Board is entitled to no priority over the claims of other unsecured creditors in the distribution of the debtor's property. *See NLRB v. Deena Artware, Inc.*, 251 F.2d 183, 185 (6th Cir.1958) ("the beneficiaries of the back pay awards are private persons for whom the Board is acting as agent. The claims have no status or priority different from that enjoyed by other unpaid wage claims"); *cf. In re Bildisco*, 682 F.2d 72, 78 (3d Cir.1982), *aff'd, NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (holding rejection of collective bargaining agreement authorized under section 365(a) as an executory contract).

The corporate Chapter 7 bankruptcy case is designed to provide an orderly proceeding in which the debtor corporation's assets may be marshalled and their pro rata distribution to creditors obtained. To this end the Bankruptcy Court is vested with exclusive jurisdiction over all the debtor's property. *See* 28 U.S.C. § 1471(e) (1982). The filing of a bankruptcy petition operates as a stay of any action to obtain possession of "property of the estate" which is comprised of "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1) (1982). *See* 11 U.S.C. § 362(a) (1982).

Once the trustee, under the auspices of the Bankruptcy Court, has collected all the debtor's property the Code dictates an elaborate step-by-step distribution order which serves to ensure an equitable distribution of the debtor's assets. *See* 11 U.S.C. § 726 (1982). These characteristics of bankruptcy—the exclusive jurisdiction of the Bankruptcy Court, the stay of any creditors' piecemeal actions to collect the property of the debtor's estate, and the detailed order for distribution of the debtor's assets—protect equal treatment for all creditors and avoid the incoherent dismemberment of the debtor which would occur under a "first-come-first-served" scheme. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 178, *reprinted in*, 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6138.

In a further effort to consolidate all the debtor's assets and distribute them equally between creditors, the Bankruptcy Code contains provisions empowering the court or the trustee in bankruptcy to recover property belatedly, unlawfully, or fraudulently transferred by the debtor in an effort to place it outside the reach of creditors. Any effort to recover this property is essentially an action to recover property that belongs to the debtor. *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir.1983). For example, the section 544 "strong arm" provision of the Code allows the trustee to "step into the shoes" of a creditor in order to nullify transfers voidable under state fraudulent conveyance acts for the benefit of *all* creditors. *See* 11 U.S.C. § 544 (1982). Any property recovered is returned to the estate to be divided pro rata. *In re Johnson*, 28 B.R. 292, 297 (Bankr.N.D.Ill.1983). The Supreme Court has stated that the definition of property of the estate includes "any property made available to the estate by other provisions of the Bankruptcy Code." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Thus, property fraudulently conveyed and recoverable under Bankruptcy Code provisions remains property of the estate and, if recovered, should be subject to equitable distribution under the Code.

The Board's claim against Arsham challenges as fraudulent a transaction from

MARSCO to Arsham. It is well established that a creditor can proceed against a bankrupt corporation's officers and directors despite the automatic stay provision of the Bankruptcy Code. *See, e.g., In re Nashville Album Productions, Inc.*, 33 B.R. 123 (M.D.Tenn.1983). The creditor's ability to bring suit is premised upon the notion that the action is not one against the debtor or the property of the estate. *Id.* at 124. If, however, a creditor brings a collateral action against third parties (including the debtor corporation's officers) in an attempt to satisfy the bankrupt's obligation by attacking, as fraudulent, a property transfer to these third parties such action is stayed under Code section 362(a). *See, e.g., In re MortgageAmerica*, 714 F.2d at 1275–76. To allow a creditor of the bankrupt to pursue his remedy against third parties on a fraudulent transfer theory would undermine the Bankruptcy Code policy of equitable distribution by allowing the creditor "to push its way to the front of the line of creditors." *In re Central Heating & Air Conditioning, Inc.*, 64 B.R. 733, 737 (N.D.Ohio 1986). Such an action is a delayed attempt to obtain property of the estate to the exclusion of all other creditors.

In the case at bar the NLRB is indirectly attempting to obtain an impermissible priority over other creditors. The Board took no action in the Bankruptcy Court to set aside the transfer of the debtor corporation's assets to Arsham pursuant to the allegedly fraudulent security agreement. If the Board had successfully avoided this transfer the proceeds would have been shared equally by all the unsecured creditors. Instead, the Board now attempts to circumvent the equitable nature of asset distribution in bankruptcy by waiting and letting the assets pass out of the debtor's

hands into those of a third party who can then be held accountable to the Board alone for the entire back pay award. We cannot allow the Board to secure for itself preference before the other creditors. *Cf. In re New England Fish Co.*, 19 B.R. 323, 328 (Bankr.W.D.Wash.1982) ("where claims result from non-bankruptcy litigation or administrative proceedings, and the debtor becomes involved in bankruptcy, the only framework for priorities among claimants is that of the bankruptcy statute"). Thus, in light of the purposes behind the Bankruptcy Code, we hold that the Board's failure to pursue its remedy in the Bankruptcy Court precludes it from attempting to impose derivative liability upon Arsham by attacking as unlawful the conveyance from MARSCO to Arsham.[2]

We therefore deny the petition for enforcement of the Board's order.

---

**2.** Our decision in the case that the Board may not bypass bankruptcy proceedings and pursue the debtor corporation's assets for the Board's exclusive benefit does not undermine labor policy because "that policy ... is to protect the process of labor negotiations, not to impose particular results on the parties." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 534, 104 S.Ct. 1188, 1200, 79 L.Ed.2d 482 (1984). A bankruptcy filing will never become a "safe haven" for corporate wrongdoers with labor problems because both the Bankruptcy Court and the trustee

have powers to avoid transactions designed to hide assets and defraud creditors. The NLRB, as the representative of the debtor's employees, is a creditor entitled to the benefit of these avoidance powers vested in the court or trustee. Furthermore, under Chapter 11 a debtor-in-possession remains obligated as an "employer" to bargain collectively with the employees' representative, *see Bildisco & Bildisco, supra* at 534, 104 S.Ct. at 1200, and thus cannot escape its collective bargaining obligations in most instances.