In re TRI–STATE MECHANICAL SERVICES, INC., Debtor.

DUTCH MILLER CHEVROLET, INC. and Dutch Miller Lincoln–Mercury of Huntington, Inc., Plaintiffs,

v.

TRI–STATE MECHANICAL SERVICES, INC., the First Huntington National Bank, Mellon Bank, N.A., and James A. Prostko, Defendants.

Bankruptcy No. 90–2783 JLC.
Adv. No. 90–520(7).

United States Bankruptcy Court,
W.D. Pennsylvania.

June 18, 1992.

Robert A. Galanter, and James A. Prostko, Phillips and Galanter, P.C., Pittsburgh, Pa., for trustee.

Cathy Ann Chromulak, Meyer, Darragh, Buckler, Bebenek, Eck & Hall, Pittsburgh, Pa., for Dutch Miller Chevrolet, Inc. and Dutch Miller Lincoln–Mercury of Huntington, Inc.

Chris Plybon, First Nat. Bank of Huntington, Huntington, W.Va., for First Nat. Bank of Huntington.

Jacqlyn D. Stein, Mellon Bank, N.A., Pittsburgh, Pa., for Mellon Bank, N.A.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Chief Judge.

The matter before the court is an adversary proceeding for a permanent injunction filed by Dutch Miller Chevrolet, Inc. and Dutch Miller Lincoln–Mercury of Huntington, Inc. against James A. Prostko, Trustee, to prevent the Defendants from utilizing funds in a Reserve Account maintained at the First Huntington National Bank. For the reasons discussed below the request for a permanent injunction is denied, and judgment is entered in favor of the Trustee in the full amount of the Account.

## I. FACTS

The plaintiffs, Dutch Miller Chevrolet, Inc. and Dutch Miller Lincoln–Mercury of Huntington, Inc. (hereinafter collectively "Dutch Miller") are West Virginia corporations engaged in the business of selling, servicing, and repairing new and used automobiles. Dutch Miller's principal place of business is North Huntington, West Virginia.

Defendant Tri–State Mechanical Services, Inc. (hereinafter "Tri–State"), is a corporation with its last place of business in Pittsburgh, Pennsylvania. Tri–State is a debtor pursuant to an Order for Relief entered on October 1, 1990 in a Chapter 7 involuntary proceeding.

Defendant First Huntington National Bank (hereinafter "First Huntington"), is a banking institution with its principal place of business in Huntington, West Virginia. First Huntington is the holder of account number 50–3141–9 (hereinafter "First Huntington Account" or "Account"), the subject of this adversary action. Defendant, James A. Prostko (hereinafter "Trustee") is the interim Trustee appointed by an Order dated October 16, 1990 in the pending bankruptcy proceeding.

Before the filing of the bankruptcy petition, Tri–State was in the business of ad-

ministering extended warranty service contracts sold by dealers, such as Dutch Miller, to purchasers of new and used automobiles. Dutch Miller entered into Dealer Agreements with Tri–State which granted Dutch Miller the authority to sell Tri–State Mechanical Service Agreements (hereinafter "Tri–State Service Agreements" or "Amendments") to its customers.

Dutch Miller provided repair services for customers with a Tri–State Service Agreement. A customer then made payment to Dutch Miller for the deductible and any repairs not authorized by Tri–State. Customers received a credit on the repair bill for repairs covered under the Tri–State Service Agreement and authorized by Tri–State. Tri–State remitted payment to Dutch Miller for all authorized repairs performed by Dutch Miller which were covered under the Tri–State Service Agreement.

At some point, Dutch Miller became concerned that Tri–State would not be able to continue reimbursement for claims from Tri–State Service Agreements sold prior to November 1, 1988.[1] On February 28, 1989, in order to induce Dutch Miller to continue doing business with Tri–State, Tri–State and Dutch Miller executed amendments to the Dealer Agreements. (hereinafter

"Amendments to the Dealer Agreements").[2] Pursuant to which an interest bearing checking account with an initial and only deposit of $409,222.00 was opened at First Huntington Bank and placed in the First Huntington Account on March 13, 1989. The funds were taken from the commingled funds in Tri–State's general account at Mellon Bank. Funds from the First Huntington Account were to be used to pay Dutch Miller for claims from Tri–State Service Agreements sold prior to November 1, 1988.

On September 7, 1990, an involuntary petition was filed under Chapter 7 of the United States Bankruptcy Code against Tri–State. An order for relief was entered on October 1, 1990. On December 18, 1990, Dutch Miller obtained a Preliminary Injunction enjoining the Trustee from utilizing the funds in the First Huntington Account. Dutch Miller now seeks a permanent injunction.

## II. DISCUSSION

### A. *Is the First Huntington Account a Trust?*

1. Express Trust

■ Dutch Miller alleges that a permanent injunction should be granted because

---

1. The payment of claims for Tri–State Service Agreements purchased after November 1, 1988 is guaranteed by insurance companies.

2. The Amendments to Dealer the Agreements provide in pertinent part:
   [T]he parties agree to amend the Dealer Agreement between Tri–State and Dutch Miller Chevrolet ... only as follows:
   (1) Dealer has been, and shall remain, "Dealer" under the Agreement as if Dealer was a party to and had executed the Agreement.
   (2) The Required Reserve, as that term is defined in that certain Trust Agreement dated April 12, 1985 by and among Virict Mechanical Services, Inc., Virict Mechanical Service of West Virginia, Inc., [Virict is Tri–State's predecessor] and Mellon Bank, N.A. and that certain First Amendment to Trust Agreement dated November 21, 1988 by and among Tri–State Mechanical Services, Inc. and Mellon Bank, N.A. (collectively "Trust Agreement"), of Dealer, Dealer Number 81020, as of November 30, 1988 in the amount of $354,712.00 shall be deposited into an account at a bank designated by Dealer ("Account").

(3) The Account will in the name of Tri–State only.
(4) The funds in the Account can only be withdrawn to pay claims and cancellations on policies sold by Dealer prior to November 1, 1988 in accordance with the terms of the Trust Agreement.
(5) Tri–State will deposit additional funds in the Account as required by the Trust Agreement.
(6) Tri–State will send a copy of the bank statements for the Account to Dealer each month.

Two Amendment to Dealer Agreements were entered into on February 28, 1989. One for Dutch Miller Chevrolet, and the other for Dutch Miller Lincoln–Mercury of Huntington, Inc. $354,712.00 was the required deposit on behalf of Dutch Miller Chevrolet, Inc. Another deposit of $54,510.00 was made on behalf of Dutch Miller Lincoln–Mercury. The aggregate amount of $409,222.00 was deposited into a single account, the First Huntington Account. Both Amendments to Dealer Agreements are otherwise identical.

the funds in the First Huntington Account are not the property of the estate, but are held in an express trust for the benefit of Dutch Miller and its customers. Title 11 U.S.C. § 541(a)(1) states that the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." Dutch Miller must show possession of a legal and equitable interest in the First Huntington Account.

The Pennsylvania Supreme Court in *Buchanan v. Brentwood Federal Sav. & Loan Assoc.*, 457 Pa. 135, 320 A.2d 117 (1974), held "[i]t is well settled that no particular form of words or conduct is necessary to create a trust." *Id.* 320 A.2d at 122; *See also In re H.L. Murry Drilling Co.*, 121 B.R. 485 (Bankr.W.D.Pa.1990). According to the court, "[t]he question is whether the agreements taken as a whole evidence an intent 'to impose ... upon the transferee of the property equitable duties to deal with the property for the benefit of another person.'" *Buchanan*, 320 A.2d at 122 (*quoting* 1 A. Scott, Law of Trusts § 24, at 192 (3d ed. 1967)). More precisely, "[a] trust is a relationship between two persons, by virtue of which one of them as Trustee holds property for the benefit of the other." *Id.* at 123, (*quoting Vosburgh's Estate*, 279 Pa. 329, 123 A. 813, 815 (1924)).

Dutch Miller argues that the Amendments to the Dealer Agreements between Dutch Miller and Tri–State created an express trust by virtue of the incorporation of the terms and conditions of the 1985 Trust Agreement between Virict[3] and Mellon Bank. Dutch Miller also maintains that the Amendments indicate an intent by Tri–State to hold the funds for the benefit of Dutch Miller.

The evidence, however, does not support this conclusion. The Amendments to the Dealer Agreements incorporate only three administrative provisions of the 1985 Trust Agreement.[4] This level of incorporation indicated that while the parties were sophisticated about trusts, they still chose only to incorporate certain administrative provisions of the existing 1985 Tri–State Trust Agreement.

The 1985 Trust Agreement contained specific provisions that explicitly established a trust fund administered by a Trustee. The parties here, however, chose not to incorporate these terms. Had they incorporated these terms of the 1985 Trust Agreement, there would have been better evidence that Tri–State and Dutch Miller intended the First Huntington Account to be an express trust. The incorporation of select administrative terms of the 1985 Trust Agreement does not meet the *Buchanan* standard; it does not indicate an intent to enter into a fiduciary relationship whereby Tri–State would hold funds in trust for Dutch Miller.

There is further evidence that Tri–State did not give up control over the funds in the First Huntington Account and that it was not holding the funds for Dutch Miller:

(1) Approximately two months after the Amendments to the Dealer Agreements were executed, the First Huntington Bank Trust Administrative Officer sent a letter to Dutch Miller.[5] In it, he indicated that creating the First Huntington Account merely occasioned Tri–State's funds transference to a different bank account. He explained that because the First Huntington Account is in Tri–State's name, only Tri–State's officers have sole access to the funds in the account. The Officer recommended that Dutch Miller create a third

---

**3.** Virict is Tri–State's predecessor. *See supra* note 2.

**4.** The three provisions are:
   1. Paragraph two of the Amendments to the Dealer Agreements refers to the Required Reserve as defined in the Trust Agreement.
   2. Paragraph four of the Amendments to the Dealer Agreements refers to claims payment procedures as set forth in the Trust Agreement.

**3.** Paragraph five of the Amendments to the Dealer Agreements refers to the depositing of additional funds in accordance with the Trust Agreement.

**5.** The letter is apparently in response to concerns of Dutch Miller that the funds in the First Huntington Account were accessible to Tri–State's Creditors and Tri–State's Officers without Dutch Miller's approval.

party escrow account in order to limit Tri–State's access to the funds.

(2) Tri–State controlled the names on the signature card for the First Huntington Account. Dutch Miller's signature, in the form of Matt Miller (Dutch Miller's president), was eventually added to the signature card. But, this addition was not permanent. According to the corporate resolutions for the First Huntington Account, it was the responsibility of Tri–State to decide the signature to be affixed to the signature card. Thus, Tri–State could remove Matt Miller's name at any time.

(3) Pursuant to the Amendments to the Dealer Agreements, the First Huntington Account was exclusively in Tri–State's name, and payment of claims was at the discretion of Tri–State.

In *Buchanan,* the Supreme Court held that the question to be examined is whether there was an intent to hold property for the benefit of another. The facts above indicate that Tri–State never relinquished complete control over the Account and did not intend to establish an express trust for Dutch Miller's benefit. An express trust was not created here, and since Tri–State, not Dutch Miller, has a legal and equitable right to the First Huntington Account under 11 U.S.C. § 541(a)(1), the Account is the property of the bankruptcy estate.[6]

■ Further, affording Dutch Miller rights in the First Huntington Account goes against the Supreme Court's ruling in *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In *Butner,* the Court held that "property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* at 55, 99 S.Ct. at 918.

In the instant case, under state law Dutch Miller would not have rights in the First Huntington Account against a lien creditor because Dutch Miller does not have a perfected security interest in the Account. Thus, following West Virginia law, § 46–9–301(1)(b) W.Va.Code (1985) a lien creditor would defeat Dutch Miller's unperfected interest in the Account. Giving Dutch Miller rights in the First Huntington Account in the form of an express trust creates rights inside of bankruptcy that Dutch Miller does not have outside of bankruptcy.

2. Implied Trust

■ Dutch Miller argues that principles of equity require that an implied trust be impressed on the First Huntington Account. Implied trusts are those which, "without being expressed, are deducible from the nature of the transaction as matters of intent, or which are superinduced upon a transaction by operation of the law as matters of equity, independently of the particular intention of the parties." *Reed v. Kellerman,* 40 F.Supp. 46, 50 (E.D.Pa. 1941). If Dutch Miller can demonstrate an equitable right in the First Huntington Account then, under 11 U.S.C. § 541(d), the bankruptcy estate acquires only bare legal title in the Account without any equitable interest in the property.

Dutch Miller relies upon *In re H.L. Murry Drilling Co.,* 121 B.R. 485 (Bankr. W.D.Pa.1990) to support its position that there should be an implied trust. In *In re H.L. Murry Drilling Co.,* the plaintiff transferred funds to the debtor for a specific purpose. The funds were deposited in a separate bank account and were segregated from the debtor's other funds and thus established "an intent to impose upon the Debtor equitable duties to deal with funds transferred for the benefit of the Defendants." *Id.* at 487. As a result, the court found that purposes of equity demanded the formation of an implied trust.

Dutch Miller asserts the application of *In re H.L. Murry Drilling Co.* by analogy: that the funds in the First Huntington Ac-

---

**6.** Even if Dutch Miller argued that Tri–State does not have adequate rights in the First Huntington Account to make it the property of the estate under 11 U.S.C. § 541(a)(1), the Trustee can use his strong-arm powers to bring the Account into the bankruptcy estate. This issue will be discussed in detail later in this Memorandum Opinion.

count were earmarked for a particular purpose and were kept segregated for use in a particular manner. Dutch Miller contends that Tri–State had an equitable duty to hold the funds for the benefit of Dutch Miller. *In re H.L. Murry Drilling Co.,* however, is distinguishable from the instant case.

In *In re H.L. Murry Drilling Co.,* the debtor never had a vested, cognizable legal interest in the funds. In the case at bar, Tri–State did have a legal interest in the funds because the funds did not come directly from Dutch Miller, but rather were transferred from the commingled funds of Tri–State to the First Account. The funds were originally Tri–State's.[7]

Further, Tri–State had substantial rights in the funds deposited. The First Huntington Account was in Tri–State's name and Tri–State controlled the disbursement of the funds from the Account. In addition, Tri–State controlled the names on the signature card.

The control Tri–State maintained over the First Huntington Account does not support the conclusion that Tri–State had an equitable duty to hold the funds for Dutch Miller. An implied trust is not created and Dutch Miller does not have an equitable interest in the First Huntington Account. Moreover, under 11 U.S.C. § 541(a)(1), the bankruptcy estate has legal and equitable rights in the Account.

3. Constructive Trust

■ Dutch Miller argues that a constructive trust should be imposed on the First Huntington Account. As the Pennsylvania Supreme Court has held, " '[a] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that

he would be unjustly enriched if he were permitted to retain the property." *Buchanan v. Brentwood Federal Sav. & Loan Assoc.,* 457 Pa. 135, 320 A.2d 117, 126 (*quoting* 5 A. Scott, Law of Trusts § 462, at 3413 (3d ed. 1967)). A constructive trust is not really a trust but rather an equitable remedy. *Id.* If Dutch Miller can demonstrate an equitable right in the First Huntington Account then, under 11 U.S.C. § 541(d), the bankruptcy estate acquires only bare legal title in the Account without any equitable interest in the property.

Dutch Miller argues that for equity reasons this court should impose a constructive trust on the First Huntington Account. It maintains that when Tri–State entered into the Amendments to the Dealer Agreements it was understood that the funds in the Account would be used by Dutch Miller to satisfy valid claims of their customers. Dutch Miller contends that to allow Tri–State to avoid its obligations would unjustly enrich Tri–State to the detriment of Dutch Miller.

This argument, however, is not persuasive. If the funds in the First Huntington Account were to go to Tri–State, exclusively for its own use, then Tri–State would be unjustly enriched. However, the Account funds in this case will become part of the bankruptcy estate, available pro rata for the benefit of all of Tri–State's creditors, not just Tri–State.

Principles of equity do not support the formation of a constructive trust. Dutch Miller does not possess an equitable right to the First Huntington Account and, under 11 U.S.C. § 541(a)(1), the bankruptcy estate has legal and equitable rights in the Account.

---

7. Dutch Miller will argue that by virtue of Dutch Miller paying Tri–State for the Service Agreements, the funds did come directly from Dutch Miller. In *H.L. Murry Drilling Co.,* however, the entire amount of the funds that were transferred was earmarked for a particular purpose. In the instant case, the funds paid to Tri–State by Dutch Miller were not just for the purpose of paying claims to Dutch Miller, but also included profit to Tri–State. Further, unlike in *H.L. Murry Drilling Co.,* there is no way for Dutch Miller

to argue that the funds were paid to Tri–State in anticipation of the creation of the First Huntington Account: the funds were transferred for Service Agreements entered into before November 1, 1988—years before the First Huntington Account was created. Finally, in *H.L. Murry Drilling Co.,* the funds never lost their identity as a trust fund. In our case, because the funds were commingled with other funds from other dealers, they did lose an identity of having a special relationship to Dutch Miller.

B. *The Trustee Could Attach the First Huntington Account Under 11 U.S.C. § 544(a)(1)*

■ As decided *supra*, there is not an express, implied, or constructive trust in the First Huntington Account. Under 11 U.S.C. § 541(a)(1), the First Huntington Account is the property of the bankruptcy estate. Assuming *arguendo* that a trust does exist, and Dutch Miller has a property right in the Account, the Trustee can still bring the First Huntington Account into the property of the bankruptcy estate via his 11 U.S.C. § 544(a)(1) strong-arm powers. Furthermore, even if Tri–State does not have a adequate interest in the Account to make it part of the bankruptcy estate under 11 U.S.C. § 541(a)(1), the Trustee can also apply 11 U.S.C. § 544(a)(1) to bring the First Huntington Account into the property of the bankruptcy estate.

Under West Virginia law, § 46–9–301(1)(b) W.Va.Code (1985), a creditor that becomes a lien creditor before a seller perfects its security interest in property has priority over the seller. The strong-arm powers of the Trustee under 11 U.S.C. § 544(a)(1) follow this non-bankruptcy result. Title 11 U.S.C. § 544(a)(1)[8] provides that the Trustee has the rights and powers of a hypothetical lien creditor under non-bankruptcy law, who comes into being and levies at the commencement of the case. If under non-bankruptcy law a hypothetical lien creditor would prevail over a third party, the Trustee can avoid the unperfected security interest, and the property becomes the property of the bankruptcy estate. The property is then divided pro rata among all of the debtor's general creditors. This strong arm power gives the creditors access to what they would have had outside of bankruptcy.

Dutch Miller has at best an unperfected security interest in the First Huntington Account. If a creditor of Tri–State levies on the Account before Dutch Miller perfects its interest in the Account, under West Virginia law § 46–9–301(1)(b) W.Va. Code (1985), the creditor has a priority interest in the Account. Thus, via 11 U.S.C. § 544(a)(1), the Trustee as a hypothetical lien creditor would be able to use West Virginia law to defeat Dutch Miller and bring the Account into the property of the bankruptcy estate.

Dutch Miller makes two separate arguments for how it could defeat the Trustee's 11 U.S.C. § 544(a)(1) powers:

#### 1. Statutory Remedy

Dutch Miller concedes that it is at best an unsecured creditor of the First Huntington Account. But Dutch Miller argues that under West Virginia law, it has a statutory remedy to defeat a creditor trying to levy on the First Huntington Account. Under § 38–7–41 or § 38–6–4 of the West Virginia Code, Dutch Miller could have petitioned a West Virginia Court and asserted that it had an equitable ownership right in the property. If successful, Dutch Miller could have received a court order protecting its rights in the Account.

■ Title 11 U.S.C. § 544(a)(1) was designed, however, to eliminate this type of race between creditors to assert ownership rights. Outside of bankruptcy it is uncertain who will prevail between an unperfected secured creditor and a general creditor. Since neither party has taken the steps necessary to acquire ownership rights in the property through perfection or levying, and because there is no way of knowing who would perfect or levy first, it is not certain which party has a clear right to the property. Title 11 U.S.C. § 544(a)(1) solves the problem of race for ownership. It declares a tie in the race and allows the Trustee to avoid the unperfected security

---

**8.** 11 U.S.C. § 544(a)(1) states:

    **(a)** The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

    **(1)** a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

interest, insuring that all creditors share equally in the property. *See* Douglas G. Baird, *Elements of Bankruptcy*, (1992).

In the instant case, it is not clear whether Dutch Miller or another creditor would have successfully asserted their right to ownership in the First Huntington Account. Dutch Miller may have successfully acquired a remedy before a West Virginia court to defeat a levying creditor, or the levying creditor may have been successful in gaining rights in the First Huntington Account. But, the result is not clear. The Trustee solves this uncertainty by invoking 11 U.S.C. § 544(a)(1) and bringing the First Huntington Account into the bankruptcy estate.

### 2. Equitable Ownership Rights

 Dutch Miller maintains that its equitable interest in the First Huntington Account prevails over the Trustee's 11 U.S.C. § 544(a)(1) strong arm powers. If Dutch Miller is found to have an equitable right in the First Huntington Account via an implied or constructive trust then, under 11 U.S.C. § 541(d), the bankruptcy estate acquires only bare legal title in the Account without any equitable interest in the property.

Dutch Miller argues that its equitable interest in the First Huntington Account trumps the Trustee's 11 U.S.C. § 544(a)(1) powers. Courts have ruled, however, that the Trustee can still use his 11 U.S.C. § 544(a) powers to preempt 11 U.S.C. § 541(d). *See In re Elin*, 20 B.R. 1012 (D.C.N.J.1982) *aff'd without opinion* 707 F.2d 1400 (CA3 NJ 1983); *In re Dlott*, 43 B.R. 789 (Bankr.D.Mass.1983); *In re Anderson*, 30 B.R. 995 (M.D.Tenn.1983); *In re Tleel*, 876 F.2d 769 (C.A.9 1989).[9] These decisions demonstrated that the Trustee can bring any property into the bankruptcy estate which he could have reached with his 11 U.S.C. § 544(a) strong arm powers.

### III. CONCLUSION

Though Dutch Miller may have equitable rights in the First Huntington Account, because the Trustee is not precluded by 11 U.S.C. § 541(d) from using his strong arm powers, the Account can still become the property of the bankruptcy estate. As an unperfected creditor, Dutch Miller loses to a hypothetical lien creditor that levies on the date of the commencement of the case. Therefore, the Trustee as a hypothetical lien creditor could avoid Dutch Miller's interest in the First Huntington Account, and bring the Account into the bankruptcy estate.

---

9. *But see, In re Howard's Appliance*, 874 F.2d 88 (C.A.2 1989); *In re Jones*, 77 B.R. 541 (Bankr. N.D.Tex.1987); *In re Atlantic Mortgage Corp.*, 69 B.R. 321 (Bankr.E.D.Mich.1987).