**In re George John BARRINGER, Debtor.**

**George John Barringer, Plaintiff,**

**v.**

**Eab Leasing, the Paragron Capital Group, Inc. and MPH Vehicle Management Corp., jointly and severally, Defendants.**

**Bankruptcy No. 99–30513.
Adversary No. 99–3030.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division–Flint.

Oct. 4, 1999.

Thomas J. Budzynski, Mt. Clemens, MI, for Plaintiff.

Steven W. Moulton, Flint, MI, for Defendants.

### OPINION REGARDING SCOPE OF AUTOMATIC STAY

ARTHUR J. SPECTOR, Bankruptcy Judge.

In January of 1997, George Barringer leased a truck from MPH Vehicle Management Corporation. He defaulted

on his lease payments, and the truck was repossessed on March 6, 1999. Two days later, Barringer filed for chapter 13 bankruptcy relief. He then initiated this adversary proceeding by filing a complaint against MPH, which has refused to return the truck to him. (Other entities apparently related to MPH are also named as defendants.) A principal allegation made by the Debtor, who does not claim that repossession of the truck was illegal, is that "failure to turn over [pursuant to 11 U.S.C. § 542(a)] constitutes a violation of the automatic stay as codified under 11 USC 362." Complaint at ¶ 15.[1] For reasons to be explained, the Court rejects this assertion.

In arguing that a stay violation occurred, the Debtor relies solely upon a recent opinion of the Sixth Circuit Bankruptcy Appellate Panel, *In re Sharon*, 234 B.R. 676 (6th Cir. BAP 1999). *See* Plaintiff's Trial Brief at p. 4. The creditor in that case repossessed a woman's car shortly before she filed for bankruptcy under chapter 13. *Sharon*, 234 B.R. at 680. The creditor refused to return the vehicle, so she "filed a Motion for Contempt and Sanctions for Violation of the Automatic Stay." *Id.* In a 2–to–1 decision, the court ruled that the creditor did in fact violate 11 U.S.C. § 362(a)(3) by failing to comply with the turnover request. *Id.* at 682.

While *Sharon* directly supports the Debtor's position, the case is neither binding nor persuasive. In the sections which follow, we explain the basis for this conclusion.

### I. This Court Is Not Bound by *In re Sharon*

Neither the Plaintiff nor the Defendants addressed the question of whether *Sharon* is binding, and we are disinclined to render

1. According to the Debtor, at the time of repossession the truck "contained certain personal property ..., including ... all of [his] ... tools and a satellite system belonging to [his] ... contract employer." Complaint at

¶ 9. In this opinion, we consider only the question of whether the automatic stay applies to the truck itself, without regard to its contents.

a definitive opinion on the subject without benefit of the parties' input. *See generally Ladner v. United States*, 358 U.S. 169, 173, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) (choosing to defer consideration of "an important and complex [question until it is] ... adequately briefed and argued"). We instead note only that appeals to the B.A.P. have not been authorized by the Eastern District of Michigan. *See generally* 28 U.S.C. § 158(b)(6). Since our district is "outside the loop," so to speak, we presume for present purposes that this Court is not bound by decisions of the Sixth Circuit BAP.[2] *See generally* R. Obregon, *In re Globe Illumination Co.: A Provocative But Flawed Theory on the Precedential Value of BAP Authority*, 21 Cal. Bankr.J. 45, 49–50 (1993) ("[I]t makes more sense to view a bankruptcy appellate panel as a 'unit of the district court' than as an 'adjunct of the Court of Appeals.' ... [A]n appeal to the BAP in the first instance is an appeal to the district court, which in turn may relegate appellate review, with the litigants' consent, to a bankruptcy appellate panel." (citation omitted)); *United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir.1994) ("Opinions 'bind' only within a vertical hierarchy."); *Gould v. Bowyer*, 11 F.3d 82, 84 (7th Cir.1993) ("A district court decision binds no judge in any case, save to the extent that doctrines of preclusion (not stare decisis) apply."); 28 U.S.C. § 151 ("In each judicial district, the bankruptcy judges ... shall constitute a unit of the district court to be known as the bankruptcy court for that district."). *But see In re Globe Illumination Co.*, 149 B.R. 614, 620 (Bankr.C.D.Cal.1993) ("[A] bankruptcy appellate panel is a unit of the circuit court ....").

## II. The Right of Possession Under Section 542(a) is Non–Derivative

### (A) The Derivative/Non–Derivative Distinction

Section 541(a) states:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

---

**2.** We express no opinion as to the precedential force of such decisions in those districts in the circuit which are on the "BAP track."

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. § 541(a).

■ Pursuant to this statute, then, there are three sources of estate property: (A) interests owned by the debtor when the case commenced, *see* 11 U.S.C. §§ 541(a)(1), (2); (B) certain narrowly defined interests which the debtor acquires post-petition, *see* 11 U.S.C. § 541(a)(5); and (C) interests acquired by the estate in its own right, *see* 11 U.S.C. §§ 541(a)(3), (4), (6) and (7). The first two classes of interests are "derivative": The estate automatically acquires the interest by virtue of the fact that it previously belonged to the debtor. The third class, for lack of a better term, comprises those interests which are "non-derivative": The estate acquires such an interest for reasons other than the mere fact that the debtor used to own it.

**(B) The Creditor's Right of Possession**

■ Security agreements frequently provide creditors with a right to seize or repossess the collateralized property in the event of the debtor's default. Similarly, creditors holding non-consensual liens on the debtor's property are permitted by statute to levy on the property, thereby acquiring possession of that property. Under either scenario, if the seizure is "lawful," (by which we mean permissible under the terms of the parties' contract and/or applicable law), then the creditor holds not only the physical property itself, but also the abstract right of possession. It may well be true that the debtor retains certain rights in or relating to the seized property, such as legal or equitable ownership, a right of redemption, or a right to any surplus from sale of the property.

But by definition (since we're talking here only about legally valid seizures), the debtor does not have a present right to possess the property.

**(C) Section 542(a)**

■ This statute states that "an entity ... in possession ... of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee ... such property." 11 U.S.C. § 542(a). Sections 363 and 522, in turn, relate to estate property. Thus where applicable, § 542(a) obligates an entity to relinquish possession of estate property to the trustee of the bankruptcy estate. And this obligation can be imposed even on an entity that is otherwise *rightfully* in possession of the subject property. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205–09, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

**(D) The Trustee's Right to Possess Is Non–Derivative**

As indicated in part (C) above, a creditor in lawful possession of seized property must nevertheless turn that property over to the trustee if § 542(a) is applicable. In such instances, the estate's right to possess is not obtained from the debtor (who had no such right), but rather from the creditor (who did have such a right). Thus the estate's right of possession under § 542(a) is an example of a non-derivative interest. *See In re Coleman,* 229 B.R. 428, 432 (Bankr.N.D.Ill.1999) (Schmetterer, J.); *In re Spears,* 223 B.R. 159, 166–67 (Bankr. N.D.Ill.1998) (Lefkow, J.); *In re Fitch,* 217 B.R. 286, 288–90 (Bankr.S.D.Cal.1998); *In re Quality Health Care,* 215 B.R. 543, 579 (Bankr.N.D.Ind.1997); *In re Massey,* 210 B.R. 693, 696 (Bankr.D.Md.1997); *In re Brown,* 210 B.R. 878, 884 (Bankr.S.D.Ga. 1997); *In re Young,* 193 B.R. 620, 625–26 (Bankr.D.D.C.1996).

### (E) *Whiting Pools* Supports This Conclusion

In *Whiting Pools,* the Supreme Court stated as follows:"[Section] 541(a)(1) is intended to include in the estate any property made available to the estate by other [Code] provisions .... Section 542(a) is such a provision." *Whiting Pools,* 462 U.S. at 205, 103 S.Ct. 2309. If this assertion is accepted at face value, then one must infer that in the Court's view, *all* property interests belonging to the estate were owned by the debtor on the bankruptcy petition date. *Cf. In re Sheridan,* 215 B.R. 144, 147 n. 6 (Bankr.N.D.Ill.1996) ("[I]n *Whiting Pools* the Supreme Court suggested ... that property recoverable under other provisions of the Bankruptcy Code, such as §§ 543 ..., 547 ..., and 548 ..., is property of the estate under § 541(a)(1)."). This is so because, as we have seen, § 541(a)(1) pertains solely to "legal or equitable interests of the debtor in property *as of the commencement of the case.*" 11 U.S.C. § 541(a)(1) (emphasis added). But we are confident that the Court meant no such thing.

First of all, it is obvious from a cursory reading of § 541(a) that the bankruptcy estate is *not* limited to those interests held by the debtor when the case commenced. Indeed, the whole point of sub-paragraphs (3) through (7) clearly is to bring into the estate other kinds of interests. Thus the Court's statement, taken literally, would be nonsensical. And it would be contrary to a very straightforward and widely accepted interpretation of the Bankruptcy Code, which holds that the estate's derivative rights under § 541(a) are the same as those enjoyed by the debtor. *See, e.g., In re Graham Square, Inc.,* 126 F.3d 823, 831 (6th Cir.1997) ("Under 11 U.S.C. § 541, the trustee succeeds only to the title and rights in property that the debtor had and takes the property subject to the same restrictions that existed at the time the debtor filed the petition .... Thus, a debtor's rights may not be expanded beyond what they were at the commencement of the case."). The notion that *Whiting Pools* implicitly rejected this basic tenet is all the more improbable given the fact that its vitality was acknowledged by the Court itself. *See Whiting Pools,* 462 U.S. at 204 n. 8, 103 S.Ct. 2309 (recognizing that under " § 541(a)(1)[, ... ] the estate succeeds to no more or greater causes of actions against third parties than those held by the debtor").

Second, the Court implicitly recognized on numerous occasions that in the context of a lawful pre-petition seizure, the trustee's rights under § 542(a) are non-derivative. For example, it observed that "[i]n effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor *that was not held by the debtor at the commencement of reorganization proceedings.*" *Id.* at 207, 103 S.Ct. 2309 (emphasis added). Similarly, it characterized § 542(a) as a provision which "bring[s] into the estate property *in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced,*" *id.* at 205, 103 S.Ct. 2309 (emphasis added), and acknowledged that " § 542(a) grants the trustee *greater rights than those held by the debtor* prior to the filing of the petition." *Id.* at 207 n. 15, 103 S.Ct. 2309 (emphasis added). *See also id.* at 206, 103 S.Ct. 2309 (Section 542(a) does not "require[ ] that the debtor hold a possessory interest in the [seized] property at the commencement of the reorganization proceedings."). The Court further noted that § 541(a)(1) would render § 542(a) "largely superfluous" unless the latter statute conferred on the estate rights which the debtor did not hold as of the commencement of the case. *Id.* at 207 n. 15, 103 S.Ct. 2309.

Also noteworthy is the parallel drawn by *Whiting Pools* between § 542(a) and the Code's avoidance provisions. The Court asserted that like §§ 543, 547 and 548, § 542(a) is one of "[s]everal ... provisions [which] bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy pro-

ceedings commenced." *Id.* at 205 & n. 10, 103 S.Ct. 2309. And it went on to observe that § 542(a) is "consistent with" §§ 544, 545 and 549. *Id.* at 207 n. 15, 103 S.Ct. 2309. *Cf. id.* at 206 n. 14, 103 S.Ct. 2309 ("Here, we address the *abrogation* of the ... [creditor's] possessory interest ...." (emphasis added)); *id.* at 207 n. 15, 103 S.Ct. 2309 (referring to § 542(a)'s "coercive power").

This analogy is significant because property interests recovered by the estate under the avoidance provisions are by definition non-derivative. *See* 11 U.S.C. §§ 541(a)(3), (4); *see generally In re Colonial Realty Co.,* 980 F.2d 125, 131 (2d Cir.1992) (" 'If property that has been fraudulently transferred is included in the § 541(a)(1) definition of property of the estate, then § 541(a)(3) is rendered meaningless with respect to property recovered pursuant to fraudulent transfer actions.' ") (quoting *In re Saunders,* 101 B.R. 303, 305 (Bankr.N.D.Fla.1989)); *In re Sherk,* 918 F.2d 1170, 1176 (5th Cir.1990), *overruled on other grounds by Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (Property recovered under § 548 "becomes property of the estate under section 541(a)(3) ...."); *In re Mi–Lor Corp.,* 233 B.R. 608, 619 (Bankr. D.Mass.1999); *Barnett v. Stern,* 93 B.R. 962, 968 (N.D.Ill.1988), *rev'd on other grounds,* 909 F.2d 973 (7th Cir.1990) ("Under § 541(a)(3), any property that the trustee recovers ... becomes property of the estate. Thus, the trustee may accumulate for the distribution to creditors ... property that [did not] belong[ ] to the debtor at the beginning of the case ....");

*In re Tri–State Mechanical Servs., Inc.,* 141 B.R. 488, 494 (Bankr.W.D.Pa.1992); *In re Lease–A–Fleet,* 141 B.R. 853, 860 (Bankr.E.D.Pa.1992); *In re McDonald Bros. Constr., Inc.,* 114 B.R. 989, 997 (Bankr.N.D.Ill.1990) (Wedoff, J.); *Sheridan,* 215 B.R. at 147 n. 6 (Barliant, J.). *But see infra* n. 4. Thus the logical inference is that, as is true with regard to the special avoidance powers, the trustee's rights under § 542(a) are not simply "inherited" from the debtor, but must instead be affirmatively exercised.

For these reasons, it is clear to this Court that *Whiting Pools* did not intend to suggest that the "possessory interest" in the seized property enters the estate via § 541(a)(1).[3] To the contrary, a close reading of the case compels the conclusion that it actually supports the proposition that such an interest continues to vest in the creditor as of the commencement of the case. Therefore, in this Court's view, the majority in *Sharon* erred in asserting that under *"Whiting Pools,* possession of the Debtor's car was part of the bundle of rights that became 'property of the estate' at the Chapter 13 petition." *Sharon,* 234 B.R. at 682.[4]

## III. The Automatic Stay Does Not Apply .

The filing of a bankruptcy petition "operates as a stay ... of ... any act to ... exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The refusal to relinquish possession of a debtor's property is arguably within the reach of this provision. *See, e.g., In re Del Mission Ltd.,* 98 F.3d 1147, 1151 (9th Cir.1996)

---

**3.** Perhaps the Court actually meant to refer to § 541(a), as a whole, rather than § 541(a)(1).

**4.** In fairness to *Sharon,* we note that other courts have similarly misconstrued *Whiting Pools. See NLRB v. Martin Arsham Sewing Co.,* 873 F.2d 884, 887 (6th Cir.), *modified on other grounds,* 882 F.2d 216 (6th Cir.1989) (relying upon *Whiting Pools* for its assertion that "property fraudulently conveyed and recoverable under Bankruptcy Code provisions remains property of the estate"); *In re Mort-*

*gageAmerica Corp.,* 714 F.2d 1266, 1275–77 (5th Cir.1983) (same). We further note that *MortgageAmerica,* a case favorably cited by the Sixth Circuit, *see Arsham,* 873 F.2d at 887–88, was implicitly rejected with respect to this point in a subsequent Fifth Circuit opinion. *See In re Sherk,* 918 F.2d 1170, 1176–77 (5th Cir.1990), *overruled on other grounds by Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

(concluding, based on the "control" provision, "that the knowing retention of estate property violates ... § 362(a)(3)"); *see also Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258, 264 (1995) (rejecting the contention that the creditor/bank's refusal to permit the debtor to make a withdrawal constituted the "exercise[ of] dominion over [the debtor's] property," but allowing that the contention "might be arguable if a bank account consisted of money belonging to the debtor and held by the bank"); *In re Javens,* 107 F.3d 359, 368 (6th Cir.1997) (Section § 362(a)(3)'s "control" language "could ... have been intended to make clear that (a)(3) applied to property of the estate that was not in the possession of the debtor."). *But see, e.g., In re U.S. Physicians, Inc.,* 235 B.R. 367, 375 (Bankr. E.D.Pa.1999) (" '[T]he prohibition against an act to exercise control does not reach the passive act of continuing to possess property.' " (citation omitted)). We need not decide that question, however, as there is a more fundamental problem with the Debtor's reliance on § 362(a)(3).

### (A) The Creditor Retains the Right of Possession Upon Commencement of the Case

■ A creditor who continues to possess property in which the estate has an interest can be said to "exercise control" over estate property only if the *right of possession* belongs to the estate. *See Fitch,* 217 B.R. at 290 ("Since the right to possess the car was not among the property interests which became property of the estate, Autoflow's acts to exercise control over the right to possess the car did not violate the stay."). Under such circumstances, the creditor is (arguably) usurping a property interest owned by the estate—that interest being what *Whiting Pools* described as the "possessory interest."

■ When a creditor's prepetition seizure is lawful, however, the right of possession does not automatically become part of the estate by virtue of § 541(a)(1). *See supra* p. 405. Rather, this right remains

non-estate property until it is acquired by the trustee from the creditor. *See Sherk,* 918 F.2d at 1176 ("Once either the trustee or the debtor has avoided the transfer, the property becomes property of the estate, and the debtor may then exempt it if he meets the statutory requirements."); *Mi-Lor Corp.,* 233 B.R. at 619 ("[U]pon ... exercise [of the avoidance powers,] the property recovered becomes part of the bankruptcy estate."); *Barnett,* 93 B.R. at 968 ("Under § 541(a)(3), any property that the trustee recovers ... becomes property of the estate."); *Tri-State Mechanical,* 141 B.R. at 494 ("If under non-bankruptcy law a hypothetical lien creditor would prevail over a third party, the Trustee can avoid the unperfected security interest, and the property becomes the property of the bankruptcy estate."); *Lease-A-Fleet,* 141 B.R. at 860 ("It is only if and when the debtor-in-possession *recovers* property under, *inter alia,* 11 U.S.C. §§ 550(a), 547(b), that property becomes property of the Debtor's estate."); *McDonald Bros.,* 114 B.R. at 997 ("[F]unds transferred prepetition may come into the estate upon the appropriate action being taken in the bankruptcy proceeding. However, until that action is taken, the rights of the parties to the transferred funds are not affected by the Code. It is the recovery of the funds involved in an 'avoided' transfer, not the potential for recovery, that causes the funds to be considered part of the estate."); *Sheridan,* 215 B.R. at 147 n. 6 ("Notwithstanding the suggestion in *Whiting Pools,* this Court agrees that until a retainer is recovered under § 329(b), it does not become property of the estate; at that time it becomes property of the estate ....").

### (B) The Turnover Order Transfers the Right of Possession to the Estate

■ The next question is, at what point during the pendency of the bankruptcy case does the trustee acquire the possessory interest? In this regard, we note that several courts suggest that § 542(a) is self-

effectuating. *See, e.g., In re Knaus,* 889 F.2d 773, 775 (8th Cir.1989) ("The duty to turn over the property is not contingent upon ... any order of the bankruptcy court, or any demand by the creditor [sic—trustee].... Rather, the duty arises upon the filing of the bankruptcy petition. The failure to fulfill this duty ... constitutes a prohibited attempt to 'exercise control over the property of the estate' in violation of the automatic stay."); *Del Mission,* 98 F.3d at 1151 (The obligation to turn over property "is a mandatory duty arising upon the filing of the bankruptcy petition."); *In re Abrams,* 127 B.R. 239, 242–43 (9th Cir. BAP 1991); *In re Bidlofsky,* 57 B.R. 883, 900 (Bankr.E.D.Mich.1985) (Rhodes, J.).

We do not necessarily quarrel with the foregoing proposition *if* the property in question was seized illegally. With respect to property that was lawfully repossessed prior to commencement of the bankruptcy case, however, we can only assume that the premise underlying the "self-effectuating" hypothesis is that the right of possession became estate property when the bankruptcy case commenced. And for reasons explained in Section II of this opinion, that premise is faulty.

A less radical version of the same hypothesis would hold that the turnover duty, while not arising at the inception of the case, is triggered by the trustee's demand or request for turnover. But this proposition also does not withstand analysis.

For one thing, it must be remembered that we are dealing here with a property interest—the creditor's right of possession. The contention that a creditor loses that interest on the strength of nothing more than the trustee's say-so may well be at odds with the Fifth Amendment. *See* U.S. Const. amend. V ("No person shall be ·... deprived of ... property[ ] without due process of law ...."); *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) ("[I]t is fundamental that except in emergency situations ... [,] due process

[under the Fourteenth Amendment] requires that when a State seeks to terminate a[ protected] interest ..., it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." (citation omitted)); *see generally, e.g., Chew v. Dietrich,* 143 F.3d 24, 28 n. 4 (2d Cir.), *cert. denied,* 525 U.S. 948, 119 S.Ct. 373, 142 L.Ed.2d 308 (1998) ("[T]he due process analysis is basically the same under both the Fifth and Fourteenth Amendments.").

Moreover, there is no pre-Code precedent for the proposition that the trustee can unilaterally divest a creditor of its right of possession. *See Young,* 193 B.R. at 626. Thus if Congress intended to grant such extraordinary power to the trustee, that intent would have to be plainly expressed in the Code. *See Cohen v. De La Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341, 348 (1998) ("We ... 'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.' " (citation omitted)).

· The Code, however, gives no such indication. To the contrary, the various qualifications to which the trustee's right under § 542(a) is subject strongly suggest that a creditor cannot be stripped of its right of possession without a hearing. As stated earlier, § 542(a) applies only to property which "the trustee may use, sell, or lease under section 363." 11 U.S.C. § 542(a). Section 363, in turn, states that "[t]he trustee, *after notice and a hearing,* may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1) (emphasis added). *See generally* 11 U.S.C. § 102(1) (defining the phrase "after notice and a hearing"). The use of cash collateral is prohibited altogether "unless ... the court, after notice and a hearing, authorizes such use." 11 U.S.C. § 363(c)(2)(B). And "[n]otwithstanding any other provision of" § 363, the creditor has an absolute right to "adequate protection" of its securi-

ty interest in connection with the proposed use of its collateral. 11 U.S.C. § 363(e).

Furthermore, the turnover provision does not encompass property "that the debtor may exempt under section 522." 11 U.S.C. § 542(a). It will not always be obvious whether a particular asset is one "that the debtor may exempt." *See generally* 11 U.S.C. § 522(b) (The debtor may exempt property in accordance with applicable non-bankruptcy law; in those states which have not precluded her from doing so, the debtor may in the alternative opt for the exemptions allowed under subparagraph (d).).

Finally, "property [which] is of inconsequential value or benefit to the estate" is excepted from the statute's reach. 11 U.S .C. § 542(a). Again, it will not always be self-evident that an asset qualifies for this exception.

In short, there are a range of potentially complex considerations which can enter into a determination that property is or is not subject to turnover. It, therefore, should be no surprise that such a determination is to be made in the context of an adversary proceeding. *See* F.R.Bankr.P. 7001(1); *see also, e.g., In re Perkins,* 902 F.2d 1254, 1258 (7th Cir.1990) ("A turnover action is an adversary proceeding which must be commenced by a . . . complaint."). *Compare In re Timbs,* 178 B.R. 989, 994 (Bankr.E.D.Tenn.1994) ("The courts that have expressly considered the issue have unanimously concluded that . . . actions [seeking damages under § 362(h) for alleged violation of the automatic stay] may be brought by motion rather than complaint.").

Given the many issues that may be relevant to a turnover proceeding, and in light of the fact that the Code explicitly provides the creditor with a right to be heard on some of these issues, we cannot accept the proposition that Congress intended that the trustee's right of possession under § 542(a) be absolute or self-effectuating. *Cf. Quality Health Care,* 215 B.R. at 577 (" 'In response to the trustee's [turnover]

action, a secured party will have an opportunity to assert defenses that are described in and around Section 542(a). These defenses imply that a secured party need not surrender collateral in the absence of a court order." ' (citation omitted)); *Young,* 193 B.R. at 625–26 (The view that § 362(a)(3) mandates immediate turnover pursuant to § 542(a) undermines § 363(c)(2)'s requirement of the creditor's consent or a court order authorizing the trustee to use cash collateral. It also deprives the creditor of defenses to a turnover action based on § 363(e) (adequate protection) and § 542(a)· (inconsequential value/benefit)). We instead conclude that the right must be judicially recognized in the form of a court order compelling turnover. Upon entry of such an order, the right of possession is in effect transferred from the creditor to the trustee. At this point, the right becomes property of the estate pursuant to § 541(a)(7).

### Conclusion

For the reasons stated, an order shall enter dismissing the complaint insofar as it alleges that in failing to return the truck to the Debtor, the Defendants violated the automatic stay.