William W. Emley, Amerman, Burt & Jones Co., Canton, Ohio, for debtor.

Donald N. Jaffe, Persky, Konigsberg & Shapiro Co., Cleveland, Ohio, for appellant.

In re CENTRAL HEATING & AIR CONDITIONING, INC., Debtor.

FAMOUS SUPPLY COMPANY OF CANTON, Appellant,

v.

CENTRAL HEATING & AIR CONDITIONING, INC., Appellee.

Civ. A. No. C86–2424A.

United States District Court, N.D. Ohio, E.D.

Aug. 29, 1986.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

In this bankruptcy appeal, appellant Famous Supply Company of Canton ("Famous") charges that the bankruptcy court erred when it stayed Famous' state court suit against parties who allegedly received false conveyances of assets belonging to debtor Central Heating & Air Conditioning, Inc. ("Central"). For the reasons set forth below, the judgment of the bankruptcy court is affirmed.

The District Court's appellate jurisdiction rests on 28 U.S.C. § 158 (Supp. II 1984).[1]

## I.

The facts are not in dispute and are succinctly set forth in the Memorandum of Decision of the bankruptcy court:

1. Title 28 U.S.C. § 158 (Supp. II 1984) provides in pertinent part:
   (a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

   \*　\*　\*　\*　\*　\*

   (c) An appeal under subsection[] (a) ... of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.

Central filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code on December 19, 1984. Central duly listed Famous as a creditor on its Schedules and identified Famous in its Statement of Affairs as the plaintiff in an action against the debtor on an account. On February 4, 1985 Famous filed its action in Stark County Common Pleas Court against Alliance [Heating and Air Conditioning, Inc. ("Alliance")] and three of its officers, including George Johnson, who is also the president of the debtor. Famous' complaint contains two counts, one based upon Ohio's Bulk Sales Act, Ohio Revised Code §§ 1306.01 et seq. and one based upon Ohio's Fraudulent Conveyance Act, Ohio Revised Code §§ 1336.01 et seq. Basically, Famous alleges Central fraudulently transferred its assets to Alliance at a time when Central owed Famous $58,021.83. Famous seeks $58,021.83 plus interest as compensatory damages, $500,000.00 punitive damages, attorney's fees, costs and other such relief as the court may deem just. On February 21, 1985 the trustee in bankruptcy filed a similar complaint in state court against Alliance and Johnson. The trustee's complaint prays for the return of the assets or their value, $50,000.00 punitive damages and attorney's fees.

Central sought a stay of the action against Alliance and the officers, alleging that Famous' action violated the automatic stay provision of 11 U.S.C. § 362(a) (1982 & Supp. II 1984) ("§ 362(a)"). Central relied primarily upon the authority of *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir.1983), which held that a debtor had a continuing equitable interest in a lawsuit to recover assets which had been fraudulently conveyed to avoid creditors, bringing an action by the debtor's creditors against third parties to reach such assets within the reach of § 362(a). Finding *Mortga-*

*geAmerica* to be controlling, the bankruptcy court granted Central's motion for specific enforcement of the automatic stay provision of § 362(a) against Famous. Famous filed a timely appeal to contest the issue of whether *MortgageAmerica* precludes its state suit against Alliance and the corporate officers under the Ohio Fraudulent Conveyance Act, Ohio Rev. Code Ann. §§ 1336.01–1336.12 (Page 1979).[2]

## II.

In *MortgageAmerica*, 714 F.2d at 1266, the Fifth Circuit Court of Appeals confronted the scope of § 362(a) as applied to a collateral action similar to the one filed by Famous. American National Bank of Austin ("the bank"), a creditor of Chapter 7 debtor MortgageAmerica Corp. ("the debtor"), brought three state causes of action against Joe R. Long, the sole owner of RJF, Inc., which owned all of the issued and outstanding stock of the debtor. The complaint alleged that the debtor had consummated three wrongful transfers, one directly to Long and two to creditors of the debtor for obligations which Long had personally guaranteed. The three state law theories which the bank relied upon were the "corporate trust fund" doctrine and the "denuding the corporation" doctrine, which the court treated as analytically identical, and the Texas Fraudulent Transfers Act. As described by the court, "The gist of all three claims in the suit is that because Long deliberately stripped MortgageAmerica of assets in order to benefit himself while defrauding the company's creditors, he is personally liable to one of those creditors, i.e., the bank, for the company's obligations." *Id.* at 1268.

The court identified the legal tools at hand for delineating the scope of the automatic stay provision:

---

**2.** Although Famous states five issues upon appeal, the Court finds that four of these issues are actually the same one which the Court has enunciated above. The first issue, "Whether the Bankruptcy Court erred in determining that the debtor filed its motion for contempt against Respondent-Famous only after several unsuccessful attempts in having Famous withdraw its complaint," is moot, as the bankruptcy court dismissed Central's motion for contempt.

Section 362(a) provides that the filing of [a Chapter 7] petition "operates as a[n] [automatic] stay, applicable to all entities, of ... any act to obtain possession of property of the estate or of property from the estate." 11 U.S.C. § 362(a)(3). The key term here is "property of the estate," defined in section 541 of the Code. For our purposes the relevant provision is section 541(a)(1), which provides: "The commencement of a case under section ... 303 of [the Code] creates an estate ... comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (subparagraphing deleted) [ ("§ 541(a)(1)") ]. The scope of the automatic stay under section 362 thus depends both upon the policies expressed in the Bankruptcy Code, considered as a whole, and upon the particular meaning of the phrase "all legal or equitable interests of the debtor in property."

*Id.* at 1273 (footnote omitted).

After having considered the essence of the state law theories implicated in the suit against Long and the principles for construction of the relevant bankruptcy code provisions, the court concluded that all three claims were subject to the automatic stay. First, it evaluated the effect of § 362(a) on the claim raised under the Texas Fraudulent Transfers Act, which it characterized as based upon an equitable interest held by the debtor in the transferred property. Considering the legislative history of § 541(a)(1), the construction of § 541's predecessor provision, and "the fundamental bankruptcy policy of equitable distribution among creditors," the court concluded that the debtor's equitable interest in the fraudulently transferred property was within the scope of § 541(a)(1), and thus subject to § 362(a)'s automatic stay. *Id.* at 1275. Second, the court considered how the trust fund/denuding claim would be characterized by Texas courts. It concluded that although this legal theory is usually asserted by a debtor's creditors, it

"belongs" to the debtor (analogizing it to a shareholder's derivative action). Accordingly, this claim was also "property of the estate" falling within the ambit of § 541(a)(1). *Id.* at 1276–1277.

Despite the similarity between *MortgageAmerica* and the Stark County case, Famous contends that the two cases are distinguishable because of the allegedly greater breadth of the Ohio Fraudulent Conveyance Act. Famous argues, "[T]he Ohio Fraudulent Conveyance Act not only permits an action against the fraudulently transferred property but also permits a creditor to seek personal liability against the wrongdoers." Brief of Respondent-Appellant Famous Supply Company of Canton ("Appellant's brief"), at 7. Famous claims that it "was not directing its action to the fraudulently conveyed property but rather was pursuing an independent action for damages arising out of tortious conduct." Appellant's brief, at 8. It also relies upon the decision of the Ohio Supreme Court that punitive damages and attorneys' fees are available for claims brought pursuant to the Ohio Fraudulent Conveyances Act in *Locafrance United States Corp. v. Interstate Distribution Services, Inc.*, 6 Ohio St.3d 198, 451 N.E.2d 1222 (1983). Famous suggests that since remedies in addition to the value of the transferred property can be had under the Ohio statute, suits for these additional remedies do not rest within the ambit of the *MortgageAmerica* holding.

The distinction which Famous attempts to draw between "transferred property or its value" and "personal liability" is misguided. Since the *MortgageAmerica* court clearly found that the trust fund/denuding claim implicated personal liability, 714 F.2d at 1269, but nevertheless determined that this cause of action must be stayed, it is obvious that personal liability of a third party is not determinative. Rather, the underpinning of the Fifth Circuit's decision was ownership of the cause of action

against the third party by either the debtor or its creditors.[3]

Famous' focus upon remedies available in its action against Alliance and the officers is relevant, however, for an examination of the remedies may be necessary to determine whether to characterize the claims as "property of the debtor," rather than property of the creditor. In *MortgageAmerica,* the court characterized the trust fund/denuding theory as belonging to the debtor, because any recovery would first be distributed equally among creditors, then be distributed equally among stockholders. Thus, Famous may hope to pursue its claims if it can demonstrate that it seeks a remedy which is not required to be shared with other interested parties, such as joint creditors. However, *MortgageAmerica*'s handling of the Texas Fraudulent Transfers Act claim indicates that a cause of action will also be characterized as "owned" by the debtor if it retains an equitable interest in the transferred property which can be asserted by the trustee in bankruptcy. Thus, Famous must also demonstrate that its Ohio Fraudulent Conveyance Act claim does not depend upon a continuing ownership interest by the debtor as the underlying basis for recovery. This Famous cannot do.

Ohio law provides that fraudulently conveyed property remains in the debtor for purposes of recovery by the creditors. *Barr v. Hatch,* 3 Ohio 527 (1828). As to creditors, a fraudulent transaction is void, and a creditor can levy against it as though the transaction were a nullity. *Westerman v. Westerman,* 25 Ohio St. 500, 510 (1874). Thus, the theory motivating the remedies for fraudulent conveyances provided in Ohio Rev. Code Ann. § 1336.09 (Page 1979) —as well as all doctrines permitting recovery by a creditor of a fraudulent conveyance—is that the debtor retains an interest in that property. "As to the creditors, the property continues in the debtor, and it or its proceeds are liable to the creditors' demands." *Hallack v. Hawkins,* 409 F.2d

627, 630 (6th Cir.1969) (construing Tennessee law). Since Famous' claim under the Ohio statute is based upon the theory of a continued property interest by Central, that claim is owned by Central and part of the debtor's estate protected by § 362(a). Moreover, the bankruptcy court is correct in holding that the availability of punitive damages and attorneys' fees under the Ohio statutory scheme does not alter the *MortgageAmerica* principle by creating a separate remedy not owned by the debtor. Punitive damages and attorneys' fees will not be awarded absent compensatory damages for a fraudulent conveyance. Since § 362(a) prevents Famous from receiving compensatory damages under the Ohio Fraudulent Conveyance Act, it follows that Famous will be unable to recover punitive damages or attorneys' fees.

Famous broadly hints that it is pursuing a common law tort which is distinguishable from the recovery of the property wrongfully transferred. If such a common law tort were not owned by the debtor, Famous would be able to surmount the barriers to suit enunciated in *MortgageAmerica.* Determining whether such a tort claim is "owned" by the debtor might be a difficult business, indeed. However, that scenario is illusory in the present case, for the complaint against Alliance raises only statutory claims. Granting that Ohio Rev. Code Ann. § 1336.11 (Page 1979) provides that a panoply of substantive law governs in cases not provided for by the Ohio Fraudulent Conveyance Act, it does not allow a plaintiff to assert common law causes of action which have not been pled. Moreover, Famous' claim to an independent tort is belied by its prayer for compensatory damages equal to the amount owed on account.

This Court must agree with the Fifth Circuit that both the text of the bankruptcy code and common sense dictate the conclusion that the collateral action against third

---

**3.** It appears that Famous' use of the term "personal liability" is imprecise and is meant to signify remedies in addition to return of the fraudulently transferred property or its value.

Famous' arguments with respect to additional remedies are treated below, but they must be divorced from the incorrect label of "personal liability" to avoid confusion.

parties by a creditor seeking to secure its obligation by attacking a fraudulent conveyance is stayed by § 362(a). *MortgageAmerica,* 714 F.2d at 1277. That court stated:

> [T]his result furthers the basic, common-sense principle of pro-rata distribution that runs through virtually every substantive provision of the Code. At least in modern bankruptcy law, the day of unfair and unseemly races to the courthouse is long gone. Whatever else may be uncertain or unsettled in the construction of the new Bankruptcy Code, we think it beyond cavil that the principle of first-come-first-served has no place in bankruptcy law except to the very limited extent that specific provisions give it a place.

*Id.* at 1278. No matter how Famous attempts to frame its action against the third parties, it cannot disguise the fact that it is attempting to push its way to the front of the line of creditors, rather than seeking redress for a unique injury. The policies animating the bankruptcy code forbid such an action. The appeal is dismissed.

IT IS SO ORDERED.