**In the Matter of Richard M. FLETCHER, Debtor.**

**NBD BANK, N.A., and Gerald Lindquist, Trustee, Plaintiffs,**

v.

**Laura FLETCHER and Marilyn Van Orden, Defendants.**

**In the Matter of Richard VAN ORDEN, Debtor.**

**NBD BANK, N.A., and Gerald Lindquist, Trustee, Plaintiffs,**

v.

**Laura FLETCHER and Marilyn Van Orden, Defendants.**

Bankruptcy Nos. GG 93–82300, GG 93–82706.
Adv. Nos. 93–8340, 93–8341.

United States Bankruptcy Court, W.D. Michigan.

Jan. 10, 1995.

Brian Donovan, Grand Rapids, MI, for plaintiff Gerald Lindquist, Trustee.

Donald Visser, Grandville, MI, for plaintiff NBD Bank, N.A.

David L. Conklin, Grand Rapids, MI, for defendants Laura Fletcher and Marilyn Van Orden.

*OPINION SUPPLEMENTING BENCH DECISION DENYING NBD BANK'S MOTION FOR RECONSIDERATION OF COURT'S DISMISSAL OF ADVERSARY PROCEEDINGS*

JAMES D. GREGG, Bankruptcy Judge.

## I. ISSUE

■ These two adversary proceedings principally raise procedural issues relating to standing to litigate: Once bankruptcy is commenced, may an individual creditor file or continue a lawsuit to recover alleged preferences, fraudulent conveyances or transfers, either in state court or in the bankruptcy court, against the spouses of Chapter 7 debtors? This court holds it is axiomatic that once a bankruptcy case is filed, state court fraudulent conveyance or other avoidance actions by individual creditors are automatically stayed. Moreover, avoidance actions in bankruptcy are for the benefit of *all* estate creditors; thus, the trustee acts as the estate's sole representative in filing or continuing such actions in the bankruptcy court or the state court. Absent explicit authorization from the bankruptcy court, an individual creditor lacks standing to commence or continue avoidance actions.[1]

---

1. This Opinion supersedes the court's bench opinion, rendered on November 29, 1994, in which the court denied NBD Bank's motion to reconsider the court's earlier dismissal, on July 5, 1994 (order signed on August 5, 1994), of the removed fraudulent conveyance adversary proceedings in which NBD was a party-plaintiff. On December 9, 1994, NBD filed a Notice of Appeal of this court's orders dismissing the adversary proceedings and denying NBD's motions for reconsideration.

Rendering a written opinion after a party has filed a Notice of Appeal is an unusual, but not prohibited, practice. This court follows the lead of other bankruptcy judges who have done so, albeit on a limited basis, during the early stages of an appeal. *See Archambault v. Hershman (In re Archambault)*, 174 B.R. 923, 925–26 n. 1 (Bankr.W.D.Mich.1994) (court concludes that re-

lease of its opinion would not impede the progress of the appeal because the appeal was still in its preliminary stages); *In re Piper Aircraft Corp.*, 162 B.R. 619, 622 (Bankr.S.D.Fla.1994), *aff'd, Epstein v. Official Comm. of Unsecured Creditors of the Estate of Piper Aircraft Corp. (In re Piper Aircraft Corp.)*, 168 B.R. 434 (S.D.Fla.1994); and *In re Garner*, 113 B.R. 352, 353 (Bankr.N.D.Ohio 1990) (although unaware of any specific procedure authorizing a trial court judge to issue an opinion after a party had filed an appeal, the court noted that in chapter 13 cases such a procedure was "particularly useful, at least where so doing [would] not delay or impede the appeal or impose upon any party an element of unfair surprise inconsistent with the adversary process."); *cf. United States v. Clements*, No. 1:92–CV–85 (W.D.Mich. June 13, 1994) (court issued Declaration of Judgment while appeal was

## II. PROCEDURAL BACKGROUND AND FACTS

On May 4, 1993, Richard M. Fletcher ("Fletcher" or "Debtor") filed for relief under chapter 7 of the Bankruptcy Code. Richard M. Van Orden ("Van Orden" or "Debtor") filed for chapter 7 relief on May 28, 1993. Prior to both bankruptcy filings, NBD Bank, N.A., ("NBD") obtained a civil judgment from the State of Michigan, Kent County Circuit Court ("state court") against Fletcher, Van Orden, Defendant Laura V.B. Fletcher, Defendant Marilyn Van Orden, and Richcraft, Inc. in the amount of $51,631.58. Van Orden Voluntary Petition, Schedule F; Statement of Financial Affairs, at 2–3; Fletcher Voluntary Petition, Schedule F; Statement of Financial Affairs, at 3. NBD subsequently filed[2] a Supplemental Complaint with the state court alleging that Fletcher and Van Orden had fraudulently conveyed their assets to their spouses, Laura V.B. Fletcher and Marilyn Van Orden ("Defendants") in violation of state fraudulent conveyance law. *See* MICH.COMP.LAWS ANN. §§ 566.11–.226 (West 1967).

On June 8, 1993, NBD filed a Motion For Order Of Clarification (the "Clarification Motion") in the Fletcher bankruptcy case. Fletcher base case docket # 13. NBD filed a similar motion in the Van Orden bankruptcy case on June 14, 1993. Van Orden base case docket # 7. In its Clarification Motions,

NBD asked this court to enter an order determining that the automatic stay did not apply to NBD's fraudulent conveyance action in state court against the Defendants (the "Kent County litigation" or the "state court litigation"). Fletcher base case docket # 13; Van Orden base case docket # 7. NBD specifically stated that it did not intend to pursue either Debtor, or their assets. Fletcher base case docket # 13, ¶ 5; Van Orden base case docket # 7, ¶ 5.

On June 18, 1993, Fletcher and Van Orden each filed a Motion To Hold Creditor NBD Bank In Contempt For Violation Of The Automatic Stay And For Other Relief (the "Contempt Motions"). Fletcher base case docket # 16; Van Orden base case docket # 11. The Debtors alleged that 11 U.S.C. § 362(a)(1), (3), and (6) precluded NBD from proceeding in state court against them or any asserted spouse-transferee in a fraudulent conveyance action. Fletcher base case docket # 16, ¶ 9; Van Orden base case docket # 11, ¶ 9. In addition, Fletcher and Van Orden alleged that, assuming they had made any fraudulent conveyances, the Bankruptcy Code conferred upon Gerald Lindquist, the chapter 7 trustee in both bankruptcy cases (the "Trustee"), the right to proceed against Fletcher and Van Orden, or their spouses, to recover those fraudulent conveyances. Fletcher base case docket # 16, ¶ 5–8; Van Orden base case docket # 11, ¶ 5–8.

pending where order did not alter parties' substantive rights but merely completed the record). Of course, the more time that has elapsed since the filing of the Notice of Appeal, the more reticent courts should be to use this practice. Since NBD filed its Notice of Appeal about one month ago, this court concludes that its written opinion will not hamper the progress of NBD's appeal.

In addition, this judge stated in open court on July 5, 1994 that he might supplement his decision to dismiss with a subsequent written opinion.

> I'm going to dismiss it. Adversary proceeding is dismissed. The trustee wants that. Mr. Visser [counsel for NBD] is not here to address the standing issue. I reserve the right to augment my dismissal ruling here, because I have a number of cases that I had pulled. I prepared on this some months ago. And those cases are now in a file somewhere and I'd pull them out, if necessary. I'm not going to take the time to go back and go through that, when Mr. Visser has not appeared.

Transcript, July 5, 1994 hearing, at 27. Citations for the cases referred to had been provided to Mr. Visser at prior hearings. Thus, NBD cannot claim unfair surprise at the issuance of this opinion or the contents thereof.

As the discussion in the Procedural Background and Facts section will show, NBD's attorney was given full opportunity to brief and argue the standing issue. Rather than doing so, the attorney neglected or failed to appear for some hearings. Instead, a "sandbag" appeal was filed. This offends the court's sense of procedural fairness. *Cf.* FED.R.BANKR.P. 1001. It was because of the bank's attorney's historical propensity to engage in such tactics that the court reserved the possibility of issuing a written opinion.

2. The Supplemental Complaint is dated January 26, 1993, but there is no time stamp on this court's copy of the document to indicate the date on which the Supplemental Complaint was actually filed with the state court.

The court scheduled hearings on the Clarification Motions and the Contempt Motions for July 13, 1993, in both the Fletcher and Van Orden cases. The parties agreed to two adjournments: (1) to August 10, 1993; and (2) to September 21, 1993. Fletcher base case docket ## 25–28; Van Orden base case docket ## 24, 25, 29, 30.

In a motion dated July 29, 1993, the Trustee sought to intervene in the state court fraudulent conveyance litigation. On August 2, 1993, the Trustee filed with this bankruptcy court a Notice Of Removal Under Bankruptcy Rule 9027, requesting this court to enter an order removing the state court litigation. That litigation was then removed[3] to the bankruptcy court, and adversary files in the Fletcher and Van Orden bankruptcy cases were opened ("Fletcher I Adversary; Van Orden I Adversary").

On September 21, 1993, the bankruptcy court held hearings on the Clarification Motions and Contempt Motions in the Fletcher and Van Orden bankruptcy cases. Fletcher base case docket ## 29, 31; Van Orden base case docket ## 33, 35. (Pretrial/Status conferences on the Fletcher I and Van Orden I adversary proceedings, adjourned from September 7, 1993, were once again adjourned until October 12, 1993. Fletcher I adversary docket ## 5, 8; Van Orden I Adversary Docket # 3).

At the September 21 hearing, the parties, through their respective attorneys, discussed the effect of the removal to the bankruptcy court. Since the parties contemplated discontinuing the fraudulent conveyance action in state court and having it heard in the bankruptcy court, there appeared to be no need to proceed on either NBD's Clarification Motions or Debtors' Motions for Contempt. As a result, Fletcher and Van Orden withdrew their Contempt Motions against NBD, and on September 22, 1993 this judge signed an Order Withdrawing Motion To Hold Creditor NBD Bank In Contempt For Violation Of The Automatic Stay And For Other Relief in both the Fletcher and Van Orden bankruptcy cases. Fletcher base case docket # 32; Van Orden base case docket # 36. NBD also withdrew its Clarification Motions, and on the same day this judge signed an Order Withdrawing NBD Bank's Motion For Order Of Clarification Without Prejudice in both the Fletcher and Van Orden cases. Fletcher base case docket # 30; Van Orden base case docket # 34.

Although NBD agreed to withdraw its Clarification Motions, comments of its attorney at the September 21 hearing presaged a procedural problem that plagued the removed state court litigation. NBD argued that it could pursue the Debtors' spouses for assets that had been liquidated and were no longer identifiable. Transcript, September 21, 1993 hearing, at 9–10. This judge disagreed, directing NBD's counsel to examine § 550 of the Bankruptcy Code. *Id.* Because NBD agreed to withdraw its Clarification Motions, this judge did not make any oral or written ruling on NBD's argument at that time.

On October 12, 1993, the court held the adjourned pretrial/status conferences for the Van Orden I/Fletcher I adversary proceedings. After noting the "procedural quagmire" surrounding the removed fraudulent conveyance action, this court agreed to adjourn the pretrial/status conferences until November 16, 1993. Transcript, October 12, 1993 hearing, at 13–15; *see also* Fletcher I adversary docket # 12; Van Orden I adversary docket # 7. Again, without making any ruling on the matter, this court suggested that NBD withdraw as a plaintiff in the removed adversary proceeding and allow the Trustee to bring any avoidance actions against the Debtors' spouses in the bankruptcy court.

THE COURT: I'm going to adjourn both of the adversaries then on fraudulent conveyances to November 16, 1993, at 11:00 o'clock a.m.

Now, without an order, what I said off the record, I'm going to say on the record as a suggestion. Subject to Mr. Visser

---

3. On October 28, 1993, counsel for the Trustee, NBD, and Defendants filed a Stipulation For Removal Under Bankruptcy Rule 9027 And Filing Of Responsive Pleadings, in which the parties agreed to removal of the state court litigation to this bankruptcy court. Fletcher I adversary docket # 13; Van Orden I adversary docket # 9.

[NBD's counsel] reading some cases and discussing the matter with his client, I would suggest that the bank take a position that it will remove itself or not be a party-plaintiff in the adversary proceeding on fraudulent conveyances against the debtors' spouses, given the cases I cited in status conference [*In re MortgageAmerica*, 714 F.2d 1266 (5th Cir.1983); *In re Colonial Realty Company*, 980 F.2d 125 (2d Cir.1992); and *In re Saunders*, 101 B.R. 303 (Bankr.N.D.Fla.1989) ], let the trustee go forward, recover the fraudulent conveyances, if they are avoidable, and they will go to all creditors. That's a suggestion.

. . . .

Then, with regard to the bank, the bank can go forward on the objections to discharge or, if the trustee wants to abandon his efforts on the fraudulent conveyance matters, if there is an abandonment, it would be without prejudice for the NBD to raise it back in state court again, or for the bank to step in the bankruptcy court actions and replace the trustee as a party-plaintiff so we only have one party-plaintiff.

Transcript, October 12, 1993 hearing, at 14–15. At that point, the court dismissed the court reporter and held pretrial conferences on NBD's separate adversary proceedings relating to objections to discharge. *See NBD Bank, N.A. v. Richard Muir Fletcher*, Adversary Proceeding No. 93–8327; *NBD Bank, N.A. v. Richard M. Van Orden*, Adversary Proceeding No. 93–8348.

At the adjourned pretrial/status conference hearing on November 16, 1993, only the Trustee's attorney, Brian Donovan, entered an appearance. Mr. Donovan requested another adjournment in order to obtain sufficient information to draft a more detailed complaint, as suggested by the court. Transcript, November 16, 1993 hearing, at 16–17. In addition, the court noted that the removed fraudulent conveyance complaint was procedurally defective because it listed NBD as a party-plaintiff. The court reiterated its position that NBD very probably lacked standing to sue the Debtors' spouses on a fraudulent conveyance action so long as the Trustee had

initiated such a proceeding. *Id.* at 18–19. As a result, the court agreed to again adjourn the pretrial/status conference for eight weeks until January 11, 1994.

On January 11, 1994, only the Trustee's attorney entered an appearance. He asked the court for a six-month adjournment. He explained that he had just received tapes of the § 341 meeting and had scheduled a Bankruptcy Rule 2004 examination of Van Orden. The Trustee's attorney stated that he preferred to be given adequate opportunity to submit a new pleading, and seek dismissal of the existing removed state court litigation without prejudice, rather than returning to court every six weeks to seek adjournments of the Fletcher I and Van Orden I adversary proceedings, in which NBD was a party-plaintiff. This judge, once again, placed on the record his strong tentative conclusion that NBD lacked standing to continue as a party-plaintiff in the removed pending adversary proceedings.

THE COURT: A key issue here is that the trustee is either going to have to sit down with Mr. Visser who represents the bank or you are going to have to do that.

MR. DONOVAN: Hm-mm.

THE COURT: And Mr. Visser has been involved in status conferences with you, and the court, and Mr. Conklin, for that matter representing Mr. Van Orden and Mr. Fletcher, about this issue about standing. Now I have done more research on standing. This is not a ruling but I fail to see, based on any current case law and my reading of the Bankruptcy Code, where NBD Bank has any current standing. Now if the trustee abandons the cause of action, then NBD, as creditor, will be able to sue either one or both of these debtors' respective wives. But, in the meantime, while these cases are pending and the actions aren't abandoned, I think the trustee is the proper party.

Now Mr. Visser—And I have told Mr. Visser that directly in chambers that that was my belief as to what the law is. And I have given him cases as well as I have other counsel in the status conferences. And somebody's got to raise that issue, if that's not stipulated to. So, in this next six

months, I will expect that matter to be addressed either by a motion before the court in some fashion or a stipulation.

Transcript, January 11, 1994 hearing, at 24. The court then granted the Trustee's attorney's request for a six-month adjournment. *Id.* at 25.

At the adjourned status conference on July 5 for the Fletcher I adversary proceeding, NBD's attorney again failed to appear; the Trustee's and Defendants' attorneys entered appearances. The Trustee's attorney requested a dismissal without prejudice of the pending adversary proceeding so that the Trustee could start "over with a clean slate." Transcript, July 5, 1994 hearing, at 26. This judge stated a request had been made to NBD's attorney long ago to provide legal authority supporting NBD's assertion that it had standing to continue prosecuting the pending removed adversary proceeding as a party-plaintiff. *Id.* at 27. Since the bank's attorney had *again* failed to appear at the July 5 adjourned status conference, this judge granted the Trustee's attorney's request for a dismissal. *Id.* at 27.

NBD's attorney, however, entered an appearance in the adjourned status conference for the Van Orden I adversary proceeding. It is noteworthy he made the following comments about the proposed dismissal of the Van Orden adversary proceeding:

> MR. VISSER: Your Honor, if he [the Trustee] wants to dismiss it, *I'm not going to object to that starting on his own.* Obviously, we would, in regards to the circuit court case, like to have that case simply closed on an administrative—due to administrative order. And then, if the trustee should not go ahead, then we would have that right to pick that up after the bankruptcy had been closed.

Transcript, July 5, 1994 hearing, at 29 (emphasis supplied). The court pointed out to NBD's attorney that the state court action had been removed to the bankruptcy court; thus, there no longer was a state action to administratively close. *Id.* at 29–30. As was done in the Fletcher I adversary proceeding, the court then dismissed the Van Orden I adversary without prejudice to the Trustee's ability to initiate any avoidance actions. On

August 5, 1994, this judge signed an Order Dismissing Adversary Proceeding in both the Fletcher I and Van Orden I adversaries. Fletcher I adversary docket # 19; Van Orden I adversary docket # 15.

On August 15, 1994, NBD filed a Motion For Reconsideration Of Order Dismissing Adversary Proceeding (the "Reconsideration Motions") in both the Fletcher I and Van Orden I adversaries. Fletcher I adversary docket # 20; Van Orden I adversary docket # 16. NBD asked the court to reconsider its decision to dismiss the adversary proceedings, and to dismiss the Trustee as an intervening plaintiff and remand the removed fraudulent conveyance action to the state court for administrative closing. NBD sought this relief because it wanted to "retain its position." Reconsideration Motions ¶ 6, at 2. NBD argued that dismissal of the entire adversary proceeding, for example, would preclude NBD from exercising any of its state court appellate rights. *Id.,* at 3.

The court scheduled hearings on the Reconsideration Motions for September 13, 1994. Those hearings were adjourned to October 11, 1994. Fletcher I adversary docket # 22; Van Orden I adversary docket # 18. The Trustee's attorney, NBD's attorney, and the Defendants' attorney all entered appearances at the adjourned hearing. At that time, NBD's attorney explained the reason for NBD's Reconsideration Motions.

> MR. VISSER: So what we would like is the order slightly modified again allowing the trustee to proceed remanding this to state court. There I know it would be closed administratively until this bankruptcy is complete or the trustee decides not to pursue. There is a possibility that the— and I know it's theoretical, I think the trustee does intend to pursue it. But that that right does exist to NBD until the trustee undertakes it. And in fact the trustee theoretically could decide not to pursue any of the claims. Or the trustee might decide to pursue only the most promising claims which are the easiest and not pursue the rest, which would still— should still belong to NBD after this bankruptcy has concluded. So that's the only thing that we would ask your Honor is that

that order be set aside and a slightly modified order be entered which would accomplish roughly the same thing but be, I think, more technically correct on the procedural process.

Transcript, October 11, 1994 hearing, at 33. The court noted that although the Trustee, not NBD, had standing to litigate any fraudulent conveyance action, the court had concerns about how the case had languished. Consequently, the court told the Trustee that he either had to soon institute new avoidance actions or notice out an abandonment of those actions. The court gave the Trustee seven weeks to make this decision, adjourning the Reconsideration Motions on both the Fletcher I and Van Orden I adversaries until November 29, 1994. *Id.* at 39–40.

On November 23, 1994, the Trustee in the Fletcher bankruptcy case filed against Defendant Laura V.B. Fletcher his Complaint To Avoid Fraudulent Transfers. *See* Adversary Proceeding No. 94–8418 ("Fletcher II") Docket # 1. Five days later, the Trustee filed against Defendant Marilyn Van Orden a Complaint To Avoid Preferential Or Fraudulent Transfers in the Van Orden bankruptcy case. *See* Adversary Proceeding No. 94–8423 ("Van Orden II"), Docket # 1. On November 29, 1994, the court held the adjourned hearings on NBD's Reconsideration Motions. Notwithstanding notice, NBD's attorney again did not appear for either hearing. The court noted that the Trustee had filed its avoidance actions against Defendants Laura Fletcher and Marilyn Van Orden in the respective bankruptcy cases. Once again, the court explained, based upon its independent research, that NBD lacked standing to pursue these actions against Fletcher's and Van Orden's spouses.

THE COURT: You [counsel for Trustee] filed a fraudulent conveyance action that basically is what NBD Bank has done.

I'm going to deny NBD Bank's motion for reconsideration. This file is going to be closed. Do you want to augment the record a little bit, though, on standing? That was one of the issues. I have been raising this right along with Mr. Visser and I don't know if he really argues, or debates, or exactly what, but nothing happens. I should not say Mr. Visser, NBD Bank. Nothing happens. But there are a number of cases about standing. One is *In re Sunshine Precious Metals, Inc.,* 157 B.R. 159 (Bankr.Idaho 1993).

There is another case about standing about creditors don't have the right to bring standing on fraudulent conveyance actions but they belong to the estate and the trustee. It's *Mortgage America Corporation,* 714 F.2d 1266 (5th Cir.1983).

There is some Sixth Circuit language about standing to recover fraudulently transferred property and how it belongs to the debtor and to the estate. And that's *NLRB v. Martin Arsham Sewing Co.,* 873 F.2d 884 (6th Cir.1989) with the language at page 887.

There's one here where creditors wanted to attack a fraudulent conveyance action and the stay was sought and the stay was granted. It's a Title 11 case. *Central Heating and Air Conditioning, Inc.,* 64 B.R. 733 (N.D.Ohio 1986).

Here is a case where a creditor is not entitled to relief from stay to pursue state court fraudulent transfer actions against third parties in that all creditors have the right to recovery as opposed to just the one creditor. *In re Saunders,* 101 B.R. 303 (Bankr.N.D.Fla.1989).

Then there is a case *Colonial Realty Co.,* 980 F.2d 125 (2d Cir.1992). The analysis is much the same as the *Saunders* case. All of these cases, although there are reasons for the decisions, vary somewhat. All of those cases have language and/or hold that a fraudulent conveyance action against third parties, when a debtor allegedly transfers property, belongs to the estate. They all stand for that proposition.

NBD Bank should not be able to go forward with this action and, therefore, the dismissal of the adversary proceeding stands and is reiterated.

Transcript, November 29, 1994 hearing, at 45–46. On the same day, the court signed an Order Denying Motion Of Plaintiff For Reconsideration Of Order Dismissing Adversary Proceeding in the Fletcher I and Van Orden I adversaries. Fletcher I adversary

docket # 26; Van Orden I adversary docket # 24.

On December 9, 1994, NBD filed its Notice of Appeal in the Fletcher I and Van Orden I adversary proceedings. NBD sought district court review of the bankruptcy court's dismissal order of August 5, 1994 and its subsequent denial of reconsideration on November 29, 1994. *See supra* note 1. This supplemental opinion must necessarily follow.

## III. DISCUSSION

Although intertwined, there are two issues raised by NBD's actions in these dismissed adversary proceedings. First, once the Debtors have filed for bankruptcy, can NBD pursue the Debtors' spouses in state court for assets that have lost their identity? Second, did NBD have standing to bring suit in the bankruptcy court to recover alleged preferences, or fraudulent conveyances, as avoidable transfers? As the procedural quagmire surrounding the Fletcher I and Van Orden I adversaries ripened, so did the confusion between these two issues.

### 1. *Stay of State Court Litigation.*

■ A substantial body of case law stands for the proposition that commencement of bankruptcy stays any state court fraudulent conveyance actions involving a debtor or his transferees. The case law reaches this conclusion by two different paths. One line of cases holds that fraudulently transferred property constitutes property of the debtor's estate, pursuant to § 541(a)(1), because the debtor retains an equitable interest in such property. Consequently, those cases state that § 362(a)(3) of the Bankruptcy Code stays any act by a creditor "to obtain possession of property of the estate." *See, e.g., American Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.),* 714 F.2d 1266 (5th Cir.1983); *accord Famous Supply Co. v. Central Heating & Air Conditioning, Inc. (In re Central Heating & Air Conditioning, Inc.),* 64 B.R. 733 (N.D.Ohio 1986). Thus, pursuing a debtor's spouse to recover property fraudulently transferred violates the automatic stay.

A second line of cases holds that any property that the trustee recovers, pursuant to § 550 of the Bankruptcy Code, becomes property of a debtor's estate under § 541(a)(3); until the trustee recovers the property, however, it does not constitute property of the debtor's estate. Nonetheless, these courts hold that any state court lawsuit to recover a fraudulent conveyance violates the automatic stay under § 362(a)(1) as an action "to recover a claim against the debtor." *See, In re Saunders,* 101 B.R. 303 (Bankr.N.D.Fla.1989); *accord FDIC v. Hirsch (In re Colonial Realty Co.),* 980 F.2d 125 (2d Cir.1992).

Regardless of the difference in rationale for their conclusions, the courts agree that commencing a bankruptcy case stays any state court fraudulent conveyance actions by a creditor. Pursuing a debtor's spouse, rather than the debtor, does not cure the problem. Under either line of case authority cited above, the creditor is seeking to recover either property of the estate or a claim against the debtor.

Early on in these cases, NBD argued that the automatic stay did not preclude it from suing the Debtors' spouses to recover fraudulently transferred assets that had lost their identity, i.e., had been liquidated. Transcript, September 21, 1993 hearing, at 10. Nothing in reported decisional law supports a distinction between "identifiable" and "nonidentifiable" assets. In fact, stating that assets are not identifiable amounts to nothing more than a legal conclusion. NBD would have to prove any such an assertion at trial. Allowing individual creditors to initiate or continue state court fraudulent conveyance actions by simply asserting that they were suing for nonidentifiable assets would violate the purpose of the automatic stay.

In addition, the Bankruptcy Code is contrary to NBD's assertion. Section 550 allows a trustee, after avoiding a transaction under §§ 544, 547, or 548, to recover the property transferred or *the value of such property.* The Bankruptcy Code does not limit a trustee's ability to recover preferences, fraudulent conveyances, or other avoidable transfers to the actual property transferred. Allowing NBD to pursue a state court fraudulent conveyance action for its own benefit, and not

the benefit of the bankruptcy estate, simply because a transferee may have liquidated fraudulently conveyed property, defeats the purpose of the trustee's avoidance powers, contravenes the explicit language of the Bankruptcy Code, and violates the Bankruptcy Code's equality of distribution principle. *See NLRB v. Martin Arsham Sewing Co.,* 873 F.2d 884, 887 (6th Cir.1989), *modified on other grounds,* 882 F.2d 216 (6th Cir.1989) ("Thus, property fraudulently conveyed and recoverable under Bankruptcy Code provisions remains property of the estate and, if recovered, should be subject to equitable distribution under the Code."); *Boyd v. Dock's Corner Assocs. (In the Matter of Great Northern Forest Prods., Inc.),* 135 B.R. 46, 66 (Bankr.W.D.Mich.1991) ("An axiom of the Bankruptcy Code is equality of distribution; . . .").

### 2. NBD's Asserted Standing to Remain in the Bankruptcy Adversary Proceedings.

■ Once the Trustee removed the state court litigation to the bankruptcy court, the automatic stay was no longer an issue. This court had to determine whether NBD had standing to continue as a party-plaintiff in the fraudulent conveyance actions before the bankruptcy court in which the Trustee was an intervening plaintiff. This court followed the lead of a number of other courts that have held that an individual creditor lacks standing to sue in bankruptcy to recover alleged preferences, fraudulent conveyances, or other avoidable transfers.

A fraudulent conveyance or other avoidable transfer action is a lawsuit for the benefit of *all* creditors. *See Hansen v. Finn (In re Curry and Sorensen, Inc.),* 57 B.R. 824, 828–29 (citations omitted) (9th Cir. BAP 1986) ("An action to set aside a fraudulent transfer must be brought in the name of the bankruptcy estate as the real party in interest."). Whether instituted in state court or in bankruptcy court, a fraudulent conveyance or other avoidable transfer action, by definition, redresses a general harm to all creditors, not an individualized injury to a particular creditor, such as NBD Bank. *See, e.g., Hall v. Sunshine Mining Co. (In re Sunshine Precious Metals, Inc.),* 157 B.R. 159,

164 (Bankr.D.Idaho 1993) ("The right to a cause of action under the Texas Fraudulent Transfer Act is a general one, properly asserted by the debtor in possession. . . . [E]ach creditor is only hurt to the extent that the debtor's financial position has been worsened by the alleged fraudulent transfer. Such injury is not particular to any one class of creditors; it strikes at all creditors of the debtor equally."). In a bankruptcy case, recovery of fraudulently conveyed property means that more assets exist in the estate for Congressionally mandated distribution to creditors. One goal of the Bankruptcy Code is to allocate assets equitably among a debtor's creditors. Allowing an individual creditor to sue to recover fraudulently conveyed property for its own benefit defeats the Code's goal of equitable distribution of the recovered assets. *See NLRB v. Martin Arsham Sewing Co.,* 873 F.2d 884, 888 (6th Cir.1989), *modified on other grounds,* 882 F.2d 216 (6th Cir.1989) (citation omitted) ("To allow a creditor of the bankrupt to pursue his remedy against third parties on a fraudulent transfer theory would undermine the Bankruptcy Code policy of equitable distribution by allowing the creditor 'to push its way to the front of the line of creditors.'").

Moreover, the plain language of the Bankruptcy Code provides that the *trustee* may avoid any preference or fraudulent transfer under § 547(b) or § 548(a) of the Code. (Section 1107(a) gives the debtor in possession in a chapter 11 case the rights and duties of a trustee.) But nothing in §§ 547, 548 or 550 of the Code gives to an individual creditor the right to maintain a preference or fraudulent conveyance action before a bankruptcy court. *See, e.g., In the Matter of Xonics PhotoChemical, Inc.,* 841 F.2d 198, 202 (7th Cir.1988) ("The right to invoke these provisions [§§ 544(b), 548(a) ] belongs not to a particular unsecured creditor such as Mitsui but to the trustee (or debtor in possession) as the representative of all the unsecured creditors; . . ."); *In the Matter of Feldhahn,* 92 B.R. 834, 836 (Bankr.S.D.Iowa 1988) (citations omitted) ("Generally speaking, individual creditors cannot exercise a trustee's avoidance powers. . . . A creditor holding an allowed unsecured claim lacks standing to avoid a transfer.")

NBD has not argued (and is unable to argue) that the Trustee has failed to pursue preference or fraudulent transfer actions against the Debtors' spouses. In fact, adversary proceedings against Defendants Laura Fletcher and Marilyn Van Orden are currently pending before this court. When this court dismissed NBD as a party-plaintiff from the Fletcher I and Van Orden I adversaries, NBD's attorney indicated there was no objection to the Trustee starting his own adversary proceeding. Transcript, July 5, 1994 hearing, at 29. (Hence the court's observation in note 1 regarding NBD's "sandbag" appeal.) Rather, NBD's attorney only appeared concerned with the procedural posture of the action because the state court litigation had been removed. *Id.* He sought to protect NBD's position in the now-dismissed Fletcher I and Van Orden I adversaries in the event that the Trustee failed to proceed with any preference or fraudulent conveyance actions.

This concern, however, is totally speculative. The court discerns absolutely no prejudice to NBD by rejecting its request to remand the removed Fletcher I and Van Orden I adversaries to the state court. Reiterating, the Trustee has filed adversary proceedings against both of the Debtors' spouses. If the Trustee determines, at some later date, to dismiss the preferential transfer and/or fraudulent conveyance actions, NBD may seek this court's authorization to pursue the actions against the Debtors' spouses on behalf of the bankruptcy estate.

> An unsecured creditor has no standing without first obtaining special authorization from this court. *Matter of Perkins,* 902 F.2d 1254, 1257–58 (7th Cir.1990). Absent court permission, creditors are without authority to pursue a claim of fraudulent conveyance, ..., to pursue a preference action, ..., or to enforce the Trustee's strongarm powers under § 544(a).

*In the Matter of Vitreous Steel Prods. Co.,* 911 F.2d 1223, 1231 (7th Cir.1990) (citations omitted); *see Unsecured Creditors Comm. of Debtor STN Enters. v. Noyes (In re STN Enters.),* 779 F.2d 901, 904 (2d Cir.1985) (in chapter 11 case, creditors committee, with bankruptcy court approval, may file adversary proceeding to recover fraudulent or preferential transfer when trustee or debtor in possession unjustifiably fails to do so); *In the Matter of Feldhahn,* 92 B.R. 834, 836 (Bankr.S.D.Ohio 1988) (a creditor may bring to bankruptcy court's attention the failure of debtor in possession to initiate a § 547 preference action, but creditor may not file such a suit on its own behalf.); *see also Boyd v. Dock's Corner Assocs. (In the Matter of Great Northern Forest Prods., Inc.),* 135 B.R. 46, 67–69 (Bankr.W.D.Mich.1991) (general discussion of derivative standing).

Alternatively, if the Trustee seeks to settle one, or both, of the adversary proceedings now pending, NBD Bank will have the right to object and be heard. *See* FED.R.BANKR.P. 9019. It retains future procedural protections as a creditor.

As for NBD's assertion that its state court appellate rights have been compromised, this court is at a loss. Such an argument is nonsensical. NBD is stayed during the pendency of the Debtors' bankruptcy cases from proceeding against the Debtors' spouses to recover avoidable transfers in state court; this includes any appeals. To the extent applicable, § 108(c) of the Bankruptcy Code protects creditors that may later desire to assert state law causes of action by tolling applicable statutes of limitation during the pendency of the automatic stay. If NBD used § 108(c) to institute any *allowed* post-bankruptcy litigation against the Debtors, or their spouses, its state law appellate rights would be preserved.

This court must focus on the law. Nothing in the Bankruptcy Code or reported decisional authorities supports NBD's argument that it may pursue preference or fraudulent conveyance actions against the Debtors' spouses in either state court or the bankruptcy court. The Trustee has filed adversary proceedings against the Debtors' spouses in an effort to recover alleged preferences and fraudulent transfers on behalf of all of the Debtors' creditors. The court will not base its standing decision on NBD's unsupported speculation as to future events. When, and if, those events occur, the court will conduct hearings, as may be appropriate and necessary, to

permit NBD to be heard with regard to any objection it may have.

### IV. CONCLUSION

Dismissal of the removed Fletcher I and Van Orden I adversary proceedings was, and remains, proper. NBD lacks standing to maintain or participate in these preferential transfer and/or fraudulent conveyance actions. The Trustee, as representative of the bankruptcy estates' creditors, is the proper party to initiate and prosecute any avoidance actions, and the Trustee has, in fact, done so.

The court also concludes that it acted properly in denying NBD's Reconsideration Motions. There is no prejudice to NBD by rejecting its request to undo the dismissal and remand the removed Fletcher I and Van Orden I adversary proceedings to state court. If the Trustee decides to dismiss or settle the now pending adversary proceedings, NBD may file objections and participate, at that time, in a hearing regarding the Trustee's proposed actions.