**In re Maurice Lavan GOLLIDAY, d/b/a Westshore Development Co., Debtor.**

**Maurice Lavan GOLLIDAY, Plaintiff,**

v.

**CITY OF BENTON HARBOR, Defendant.**

Bankruptcy No. HK 97–08823. Adversary No. 97–88538.

United States Bankruptcy Court, W.D. Michigan.

Jan. 15, 1998.

Mary K. Viegelahn–Hamlin, Kalamazoo, MI, for Debtor.

Melvin S. McWilliams, Lansing, MI, for City of Benton Harbor.

## OPINION

LAURENCE E. HOWARD, Chief Judge.

This matter comes before the court on two competing motions. First, the City of Benton Harbor ("City") seeks a lift of stay so that it may continue pursuing a certain state court action against the debtor. In that state court action, the City seeks a declaratory judgment concerning the debtor's eligibility to hold public office under Michigan's Home Rule Cities Act and the Benton Harbor City Charter. Second, the debtor seeks a preliminary injunction prohibiting the City from taking any actions to bar and/or terminate his right to sit as a City Commissioner. The underlying facts in this matter appear to be essentially undisputed.

## BACKGROUND

During November of 1991, the debtor and his brother ("Gollidays") borrowed approximately $25,000 from the City of Benton Harbor's revolving loan fund established pursuant to Michigan's Enterprise Zone Act.[1] As part of that transaction, the Gollidays executed a Promissory Note ("Note") and a Term Loan Agreement ("Loan Agreement") dated November 5, 1991. Pursuant to the terms of the Loan Agreement, the Gollidays were to begin repayment in February of 1993, with similar payments due in March, August, and November of that year, and likewise in successive years, until balloon payment would become due in November of 1997. Those payments were not made.

On or about January 12, 1994, the Gollidays executed an addendum to the original note. They agreed to pay $27,500 which included a penalty for their prior default. Quarterly payments on this amount were to commence on October 1, 1994 with additional payments due each January, April, July, and October until the full balance was paid, together with interest and penalties. Apparently, no payments were made pursuant to those revised terms.

In December of 1994, the debtor was appointed to the Benton Harbor City Commission. As a City Commissioner, the debtor was paid a stipend of $50 per meeting of the Commission.

In December of 1995, the Gollidays requested revised payment terms which were approved by the City Commission. Those terms included monthly payments to begin in December of 1995, a 5% interest rate to begin at that same time, and a balloon payment due in December of the year 2000. Beginning in November of 1995, the Gollidays made five monthly payments. Their sixth payment was a month late and only one third of the amount due.

At a meeting on November 17, 1996, the City Commission voted to retain legal counsel to pursue the indebtedness. The Gollidays made one additional partial payment in December of 1996 and another in January of 1997.

The City brought suit in the Berrien County Trial Court (formerly, the Circuit Court) in December of 1996. That action sought both a money judgment on the Loan Agreement and Promissory Note as well as a declaratory judgment concerning the debtor's eligibility to retain his position on the City Commission. On September 11, 1997, the state court judge entered an order stating that the Gollidays "are in default of their obligation under the Promissory Note and Term Loan Agreement, as revised, for the reasons stated on the record[.]" The judge put off, for determination on a later date, the Gollidays' liability for interest, penalties and attorney fees. He did not rule on the City's request, for declaratory judgment relief.

On October 14, 1997, the debtor filed his voluntary chapter 13 petition with this court.

---

1. M.C.L.A.    §§ 125.2101–2122,    M.S.A.    §§ 3.540(301)–(322).

Thereafter, on November 4, 1997, the debtor was elected to another term on the Benton Harbor City Commission which term would begin on January 1, 1998. The City filed its Motion for Relief from the Automatic Stay on November 12, 1997 and the debtor filed this adversary proceeding and Motion for Preliminary Injunction on December 3, 1997.

The preliminary hearing on the lift of stay motion was set for December 4, 1997. On that date, the parties were ordered to submit briefs by December 16, 1997. The final hearing on the lift of stay was conducted on December 18, 1997 and I gave a ruling from the bench. For the reasons set forth below, I denied the City's motion for lift of stay and granted the debtor's motion for preliminary injunction. On the record, I stated my intention to reduce my opinion to written form and release it for publication.[2]

The City filed an appeal of my decision on December 29, 1997. Although it may be somewhat unusual to issue a written opinion after a party appeals, it is not without precedent. *See, Archambault v. Hershman (In re Archambault)*, 174 B.R. 923, 925–26 n. 1 (Bankr.W.D.Mich.1994) and *NBD Bank v. Fletcher (In re Fletcher)*, 176 B.R. 445, 446 n. 1 (Bankr.W.D.Mich.1995). I find that because the appeal is still in the preliminary stages, and because I stated my intention on the record at the final hearing on the lift of stay motion, the release of this opinion will not impede the progress of the appeal.

### ANALYSIS

The City contends that Michigan's Home Rule Cities Act prohibits municipalities from giving official positions to individuals who are in default to the municipality. That statute reads, in relevant part:

A city does not have power:

(f) To make a contract with, or give an official position to, one who is in default to the city.

M.C.L.A. § 117.5(f), M.S.A. § 5.2084(f).

The City also points to § 3.4 of the Benton Harbor City Charter which provides, in relevant part:

No person shall be elected or appointed to any office who is in default to the City, or to any School District, County, or other municipal corporation of the State, now or heretofore existing. The election or appointment of any such defaulter shall be void.

The City now contends that because the debtor was in default to the City as of September 11, 1997, the date of the state court order, he was not eligible for election the following November and his election is therefore void.

The debtor, on the other hand, argues that 11 U.S.C. § 525(a) prohibits the City from voiding the election or denying him his seat. That section of the Bankruptcy Code reads, in relevant part:

[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act [former 11 U.S.C. §§ 1 et seq.], or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

To succeed with this argument, the debtor must have been denied a "license, permit, charter, franchise, or other similar grant," or must have had his "employment" denied or terminated. I will take these issues in reverse order.

---

**2.** The transcript reflects the following statement: "Because of the time sequence here, I've decided to do a bench opinion, and I reserve the right to modify it, if necessary, to put it in a form that's publishable, at least as to the particulars but not as to the conclusion."

■ First, as to having his "employment" denied or terminated, it is apparent that the debtor would first have to be an employee of the City. I have seen nothing that would lead me to that conclusion. While the City Commissioners may receive a stipend payment for attending Commission meetings, they act independently and are not under the control of the City as employees would be. Michigan law would classify the debtor, in his capacity as a City Commissioner, as "public officer" rather than a "public employee." *See*, Callaghan's Mich.Civ.Jur. Officers and Public Employees at §§ 2–5. Lacking evidence to support a contrary determination, I find that Mr. Golliday was not a city employee. It would therefore be impossible for the City to deny or terminate his employment. The protection which § 525(a) affords to employees of a governmental unit is not available to the debtor.

■ Second, I turn to the issue of the denial of a "license, permit, charter, franchise, or other similar grant." To rule in favor of the debtor on this basis, I would have to stretch the language of § 525(a). Certainly, seating an elected official is not a "license, permit, charter, or franchise...." The question remains as to whether it constitutes an "other similar grant...." The debtor has pointed to no cases which would make such a stretch, nor has my independent research uncovered any. I find that the seating of a City Commissioner is not an "other similar grant" for the purposes of § 525(a). While a plain reading of § 525(a) does not resolve the pending issue, I believe that the history of § 525 is relevant to the question before me.

It is clear from the legislative history that § 525 was enacted as a legislative endorsement of the United States Supreme Court's decision of *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).[3] In *Perez*, the Supreme Court essentially held that the Supremacy Clause invalidated the suspension of a bankrupt's driver's license under state law when that state law did so based on the debtor's failure to satisfy a judgment. The Supreme Court held that the state statute would be considered invalid under the Supremacy Clause because it conflicted with the discharge provision of the Bankruptcy Act.

■ While the legislative history indicates that § 525 "codifies the result of *Perez v. Campbell*, " there is nothing that suggests that such a codification should inhibit the development of debtor protection. I believe that apart from, and in addition to § 525, the *Perez* decision remains as authority for debtor protection in the unprovided-for situations not covered by § 525. *See*, Douglass G. Boshkoff, *Bankruptcy–Based Discrimination*, 66 Am.Bankr.L.J. 387, 397 (1992).

Apparently, Justice White believed, as do I that "one of the primary purposes of the Bankruptcy Act is to give debtors a 'new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.' " 402 U.S. at 648, 91 S.Ct. at 1710–11. *Perez* stands for the proposition that discrimination which adversely affects debtors (adverse impact discrimination) is illegal without regard to motive. This is separate from the § 525 proposition that discrimination triggered by an aversion to the bankruptcy process (improper motive discrimination) is illegal.

---

**3.** The House and Senate Reports (Reform Act of 1978) state, in part:

This section is additional debtor protection. It codifies the result of Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233(1971)....

In addition, the section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination. The courts have been developing the Perez rule. This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a State bar association or a medical society, or by other organizations that can seriously affect the debtors' livelihood or fresh start, such as exclusion from a union on the basis of discharge of a debt to the union's credit union.

The effect of the section, and of further interpretations of the Perez rule, is to strengthen the anti-reaffirmation policy found in section 524(b). Discrimination based solely on non-payment could encourage reaffirmations, contrary to the expressed policy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 366–367 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 81 (1978).

Boshkoff, *supra*, at 398. Despite the City's contention that the M.C.L.A. § 117.5(f) and § 304 of the City Charter are not discriminatory, it is evident that they target a class of individuals (i.e. those in default to the City) who are more likely than the general citizenry to be candidates for bankruptcy or debtors under the Bankruptcy Code.

 The City points out that provisions such as these have been upheld in this District and by the Sixth Circuit. *See, Corrigan v. City of Newaygo,* 55 F.3d 1211 (6th Cir. 1995), *cert. denied* 516 U.S. 943, 116 S.Ct. 379, 133 L.Ed.2d 303 (1995). I do not dispute the Constitutionality of these provisions standing alone. However, just as in *Perez,* when these provisions conflict with the Bankruptcy Code, they are invalidated by the Supremacy Clause.

Admittedly two Sixth Circuit cases are somewhat similar to, but distinguish, *Perez. See, Duffey v. Dollison,* 734 F.2d 265 (6th Cir.1984) and *In re Norton,* 867 F.2d 313 (6th Cir.1989). *Perez* left unanswered the question of whether "a State may require proof of financial responsibility as a precondition for granting driving privileges." 402 U.S. at 643–44, 91 S.Ct. at 1708–09, 29 L.Ed.2d at 238. *Duffey* and *Norton* essentially address that unanswered question with respect to Ohio and Tennessee financial responsibility laws. However, I would distinguish those two cases because they are based primarily on § 525 itself and not the *Perez* opinion, which I find to be separate and additional authority apart from the Bankruptcy Code.

Finally, the City states in its brief, essentially, that Mr. Golliday may run for City office *after* he receives his discharge. Presumably, the City would argue that because this is a chapter 13, the debtor would only receive his discharge upon conclusion of his chapter 13 plan. That view is incorrect. Such discrimination is prohibited even though the discharge in the debtor's chapter 13 has not been granted, as long as the debt is dischargeable. *See,* Collier on Bankruptcy (15th Ed.) at ¶ 525.02[2].

### CONCLUSION

Regardless of whether the City instituted the state court proceedings against the debtor in 1996, the fact remains that he filed for bankruptcy protection prior to election day in November of 1997. His status as a debtor at that point overrides the City Charter provision which voids the election of an individual in default to the City. I hold that the debtor's election was valid.

For the reasons stated above, I find that the City's actions in trying to deny the debtor his seat on the City Commission to be impermissible. The City's motion for lift of stay is DENIED. The debtor's motion for a preliminary injunction is GRANTED.

Because an Order has already been entered in accordance with my ruling from the bench, no further Order is necessary.